**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **IN RE: CREDIT DEFAULT SWAPS AUCTIONS LITIGATION** | Case No.: 1:21-cv-00606-KG-DLM |

**JOINT STATUS REPORT REGARDING DISCOVERY**

On January 26, 2024, the Southern District of New York issued an Order and Opinion permanently enjoining Plaintiffs from pursuing any claims against Defendants in the above-captioned case for any alleged violation of law based on Defendants' conduct occurring prior to June 30, 2014. *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (S.D.N.Y.), Dkt. Nos. 667 at 2 ("S.D.N.Y. Order"), and 668 at 16 ("S.D.N.Y. Opinion"). On February 23, 2024, Plaintiffs New Mexico State Investment Council ("SIC"), Public Employees Retirement Association of New Mexico ("PERA"), and the New Mexico Educational Retirement Board ("ERB," and, collectively, the "Plaintiffs") filed a joint notice of appeal to the United States Court of Appeals for the Second Circuit. *See* Dkt. 669.

Pursuant to this Court's January 24, 2024 Memorandum and Order (Dkt. No. 230 at 8-9), the parties jointly submit the following status report regarding whether and to what extent the parties believe discovery may proceed in the instant action while the Plaintiffs' appeal is pending in the Second Circuit. *In re Credit Default Swaps Auctions Litig.*, No. 21-00606 (D.N.M.).

## I.     Whether Discovery May Proceed in the District of New Mexico

**Plaintiffs' Position:** While the Plaintiffs strongly disagree with the S.D.N.Y.'s ruling and are appealing it, discovery in this case should proceed. Plaintiffs' claims were sustained by this Court. In enjoining Plaintiffs "from pursuing any claims against the [Defendants] . . . for any alleged violation of law based on conduct occurring before June 30, 2014," the S.D.N.Y.

necessarily left untouched the Plaintiffs' claims alleging violations of law based on Defendants' conduct occurring *after* June 30, 2014. *See* S.D.N.Y. Order, at 2; S.D.N.Y. Opinion, at 15. In other words, the S.D.N.Y. Order does not bar or enjoin the Plaintiffs from proceeding under the FAC for their post-July 1, 2014 claims.

The additional delay that would result from a continued, indefinite, and total stay is unwarranted. This case has been pending since June 2021. The Court denied the motion to dismiss in June 2023. As this Court previously recognized, the "Plaintiffs certainly have an interest in rapidly moving forward," and it is time for this case — coming up on its third anniversary — to proceed to discovery. *In re Credit Default Swaps Auctions Litig.*, No. 1:21-CV-0606 KG/DLM, 2024 WL 264035, at *4 (D.N.M. Jan. 24, 2024). The Court's "central, underlying reason" for staying the litigation pending the S.D.N.Y.'s resolution of Defendants' motion to enforce the release was that it could not determine for itself "the applicability and timeliness of the [r]elease with respect to Plaintiffs' claims," *In re Credit Default Swaps Auctions Litig.*, 2024 WL 264035, at *4. The Court can, however, determine how discovery should operate in *this* litigation. That the Plaintiffs are exercising their right to an appeal, or that Defendants may only be held liable for conduct occurring after June 30, 2014, does not change the analysis that a continued and total stay pending an indefinite appellate process is improper. *See Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 13 (E.D.N.Y. 2007) (denying the defendants' request for a stay while case was certified for interlocutory appeal to the Second Circuit when the defendants had waited to press their defense and a stay pending appeal would mean years of additional delay). This Court rejected "grant[ing] an indefinite stay" when it contemplated an indefinite appellate process initiated by Defendants. *In re Credit Default Swaps Auctions Litig.*, 2024 WL 264035, at *5. It should accordingly reject a continued,

indefinite, and total stay now and allow discovery to proceed in accordance with the applicable Federal and Local Rules.

Defendants' arguments to the contrary are not persuasive. First, Defendants pin the purported uncertainty on Plaintiffs' decision to appeal, conveniently omitting that it was *Defendants'* two year-plus tactical delay that created this purported uncertainty. As Judge Gonzales ruled, Plaintiffs have stated plausible antitrust and market manipulation claims. Defendants' handwringing about the cost of having to re-do discovery if Plaintiffs prevail on appeal should be subordinated to Plaintiffs' strong interest in having a chance to finally prosecute their claims in this nearly three-year old case, particularly given that the parties can structure discovery in a manner that mitigates the burden of having to re-do discovery if Plaintiffs prevail.

Second, Defendants have boldly transformed their argument. Initially, they contended that Defendants cannot be held liable for damages for violations of the law they engaged in prior to June 30, 2014. Now Defendants contend that no one can even talk about or see any document about anything they did prior to June 30, 2014.

This argument is premised on a false statement. Judge Gonzales sustained Plaintiffs' claims not based on allegations "about Defendants' development, adoption, and implementation of the CDS auction protocol prior to June 30, 2014" as Defendants assert, but instead because Plaintiffs' persuasive, defendant-specific econometric analyses showed – to a statistically significant degree – that Defendants engaged in coordinated pricing and market manipulation across auctions. *See In re Credit Default Swaps Auctions Litig.*, No. CV 21-0606 KG/DLM, 2023 WL 3821337, at *32 (D.N.M. June 5, 2023) ("As an initial matter, the Court agrees with Plaintiffs that the statistical allegations, *standing alone*, allege a plausible antitrust conspiracy

3

sufficient to deny the Motion as to these claims.") (emphasis added). The fact that the auctions were structured as a dealer-only club was icing on the cake. *Id.* Excising allegations from the FAC referring to Defendants' development, adoption, and implementation of the CDS auction protocol prior to June 30, 2014 would thus change nothing with respect to Defendants' failed motion to dismiss.

Nor does the S.D.N.Y. Order require the Plaintiffs to amend the FAC. Plaintiffs are allowed to prove their claims for conduct occurring after June 30, 2014 – and they may do that even with (for example) a text message dated June 29, 2014.[1] Defendants erroneously contend that Plaintiffs cannot even use pre-June 30, 2014 proof to prove post-June 30, 2014 claims. The S.D.N.Y. Order contains no such language, and it could not because the release *cannot* have extinguished claims for conduct occurring *after* June 30, 2014. Under settled Supreme Court precedent, the resolution of one antitrust case cannot "extinguish[] claims which did not even then exist and which could not possibly have been sued upon[.]" *Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322, 328 (1955); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 73 U.S. 614, 637 n.19 (1985) (holding that if an agreement operates "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, [it] would have little hesitation in condemning the agreement as against public policy"). As the Second Circuit explained:

> More than a half-century ago, the Supreme Court stated that 'in view of the public interest in vigilant enforcement of the antitrust laws through the instrumentality of the private treble-damage action,' an agreement which confers even 'a partial immunity from civil liability for future violations' of the antitrust laws is inconsistent with the public interest.

---

[1]   In *Douglass v. Nat'l Federation of Independent Business*, 1995 WL 579649, at *2 (9th Cir. Oct. 2, 1995), the Ninth Circuit explained that a release of certain claims does not necessarily bar obtaining evidence about continuing harms: "All rights to sue for certain acts might well be barred without concomitantly barring testimony about those acts for the purpose of demonstrating that discriminatory activity was continuing." *See also Isetts v. Borough of Roseland*, 835 A.2d 330, 338-39 (N.J. Super A.D. 2003) ("[A] general release which does not expressly include a waiver of discovery cannot serve to limit the scope of discovery in the future pursuit of an unreleased claim.").

*In re Am. Express Merchants' Litig.*, 634 F.3d 187, 197 (2d Cir. 2011) *rev'd on different grounds*, 570 U.S. 228 (2013) (quoting *Lawlor*, 349 U.S. at 329) *see also Minnesota Mining and Mfg. Co. v. Graham–Field, Inc.*, 1997 WL 166497, at *3 (S.D.N.Y. Apr. 9, 1997) ("GFI could not have waived [its antitrust] claim in the releases because a prospective waiver of an antitrust claim violates public policy.").

      Defendants mischaracterize the Second Circuit's decision in *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 138 (2d Cir. 2011), to suggest the opposite. Defendants highlight that the court affirmed the district court's order requiring the plaintiffs to dismiss their complaint to the extent that it asserted released claims, but overlook that the court allowed the plaintiff to continue pursuing claims based on conduct occurring after the first case's settlement class period and expressly stated that "there can be no question that the [] claims, *to the extent that they involve conduct occurring after the Class Period, cannot be Released Claims.*" *Id*. at 138.[2]

      Defendants similarly mischaracterize the Ninth Circuit's decision in *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 749 (9th Cir. 2006). In that case, the plaintiff argued that a prior release did not bar claims based on conduct that occurred after the release period. *Id*. But Defendants fail to mention that the court expressly refused to consider that issue, explaining that it "need not address the question because Plaintiffs have failed to allege any such claims." *Id*. at 749. The court explained that the release period at issue had ended in 2004, but the plaintiffs last amended their complaint in 2003 and that "their complaint is limited to seeking damages arising from acts committed before that time." *Id*.

---

[2]    *See also Redel's Inc. v. General Electric Co.,*498 F.2d 95, 99 (5th Cir. 1974) ("Any contractual provision which could be argued to absolve one party from liability for future violations of the antitrust statutes against another would to that extent be void as against public policy. *This is because the effect of such a release could be to permit a restraint of trade to be engaged in, which would have impact, not simply between the parties, but upon the public as well.*") (emphasis added) (citation omitted)

In short, Defendants could not and did not release damages resulting from the price fixing or manipulation of CDS auctions that had yet to take place and could not take place until after the release end date of June 30, 2014.

Even if Plaintiffs cannot hold Defendants liable for damages occurring before June 30, 2014, they can still plead allegations to support claims based on conduct occurring after June 30, 2014.[3] The release operates as an affirmative defense like the statute of limitations, which likewise prevents plaintiffs from pursuing claims against defendants for conduct occurring outside of a specific window in time. Courts routinely allow plaintiffs to plead facts occurring outside the limitations period while pursuing claims for conduct within the limitations period. *See, e.g., Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1247–48 (10th Cir. 2016) (recognizing doctrine of continuing conspiracy applied, and allowing plaintiff to pursue claims for acts occurring within the limitations period based on a pleading that alleged a conspiracy beginning outside the limitations period); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006) (same); *see also V5 Techs., LLC v. Switch, Ltd.*, No. 217CV02349KJDVCF, 2021 WL 5310582, at *2 (D. Nev. Nov. 12, 2021) (allowing Plaintiff to introduce and plead "background evidence to establish a continuing course of conduct" for unreleased claims outside the limitations period even though the same conduct was previously released); *Pisarz v. PPL Corp.*, No. 4:10-CV-01432, 2011 WL 676812, at *2 (M.D. Pa. Feb. 16, 2011) (allowing the plaintiff to plead prior acts that are time-barred as

---

[3]   Defendants' arguments about the status of one of the Plaintiffs (ERB) or one of the Defendants (NatWest) are premature. Discovery on Plaintiffs' transactions and on Defendants' participation in post-June 30, 2014 auctions still has not happened. Plaintiffs' pleading is not the final word on these topics; it is merely the starting point. Similarly, Defendants' assertion about Plaintiffs purportedly "conceding" that post-June 30, 2014 conduct is "merely a continuation" of conduct from pre-June 30, 2014 is just a blatant misreading of the continuing violations doctrine, which is a doctrine about the tolling of the statute of limitations.

"background evidence" in support of a timely claim and denying motion to dismiss based on inclusion of those time barred allegations).

The District of New Mexico has similarly allowed plaintiffs to include allegations of conduct that cannot be recovered upon in complaints in support of claims that can be pursued. In *Webb v. Harris*, No. CV 02-707 JC/KBM, 2003 WL 27385430, at *2 (D.N.M. Mar. 25, 2003), the plaintiff brought an initial discrimination suit against the defendant that was dismissed with prejudice in an order stating that the plaintiff would "not plead or otherwise advance or allege any additional federal claims of any type based upon the Plaintiff's allegations set forth in Plaintiff's complaint." *Id*. at *2. When the plaintiff then brought a second suit, alleging that the same defendant retaliated against her for bringing the first complaint, the defendant moved to dismiss, arguing that the retaliation claim was "based upon" the plaintiff's allegations in the first case. *Id.* at *3. But the Court denied the motion to dismiss, holding that the plaintiff "sufficiently asserts that her termination occurred subsequent to the Stipulated Order, and it is well-settled that such claims are not barred under claim preclusion." *Id*. (citing *Lawlor*, 349 U.S. at 328).

These are recidivist Defendants who have paid tens of billions of dollars in settlements and penalties over the last two decades. *See* Dkt. 151, ¶¶ 382–83. Defendants did not and cannot purchase immunity in perpetuity for any and all future claims bearing any relation to the CDS market.

**Defendants' Position:** The Court should leave the stay in place for two main reasons. *First*, Plaintiffs' decision to appeal the S.D.N.Y. Order enforcing the settlement agreement continues the same uncertainty regarding the scope of this case that originally justified the stay. Indeed, the S.D.N.Y. Order further strengthens the grounds on which this Court granted the stay in the first place.  *Second*, because the claims in the First Amended Complaint ("FAC") are

predicated on Defendants' alleged conduct occurring before June 30, 2014, Plaintiffs are

"permanently barred and enjoined" from proceeding under the FAC pursuant to the S.D.N.Y.

Order.  (Dkt. No. 231-1 at 2.)  Defendants agree with Plaintiffs that the S.D.N.Y. Order does not

bar Plaintiffs from pursuing claims for alleged violations after June 30, 2014, but those claims

cannot be predicated on any conduct occurring before June 30, 2014.  The FAC inextricably

intertwines alleged conduct and events occurring both before and after June 30, 2014 and,

therefore, the district court's prior assessment of the FAC is now stale.  Accordingly, the FAC

must be dismissed, either voluntarily, by order to show cause, or, if necessary, pursuant to a Rule

12(c) or similar motion that Defendants are prepared to file if the FAC is not otherwise

dismissed.  If Plaintiffs intend to continue this action, then, before any discovery can begin in

this case, they must file an amended complaint that complies with the S.D.N.Y. Order.  And

Defendants must be permitted to test whether such an amended complaint can survive a Rule

12(b) challenge.  The need for these additional procedural steps to establish the contours of

Plaintiffs' claims before the parties can efficiently embark on discovery confirms that the

"parties and the Court would be burdened by proceeding with this matter" in advance of the

resolution of Plaintiffs' appeal.  (Dkt. No. 230 at 13.)  Put simply, pursuit of this case in

compliance with the S.D.N.Y. Order will necessarily require a fundamentally different complaint

than the FAC.  Plaintiffs ignore this inconvenient reality.

*First*, for all of the reasons set forth in this Court's Memorandum Order and Opinion, the

current stay of proceedings should remain in effect while Plaintiffs prosecute their appeal.

Defendants expect that the Second Circuit will fully affirm the S.D.N.Y. Order, but, in view of

Plaintiffs' appeal, the scope of their claims remains uncertain until the Second Circuit rules on

that appeal.  As this Court explained in granting Defendants' motion for a stay:

> Proceeding without clarity on how many claims Plaintiffs may bring will almost certainly lead to disputes involving time and resource intensive litigation, the result of which may nevertheless be altered by the SDNY's eventual ruling. In other words, the parties and the Court would be burdened by proceeding with this matter and further complicate, rather than simplify, the discovery process. Accordingly, the Court finds that every factor weighs in favor of granting the Defendants' Motion to Stay.

(Dkt. No. 230 at 13.)  That same logic applies with equal force while Plaintiffs' appeal is pending.  Although Defendants believe it is unlikely, if the Second Circuit were to reverse the S.D.N.Y Order, then, under Plaintiffs' proposal, the parties would be required to revisit and supplement discovery that had already been conducted.[4]  Indeed, the effect of the S.D.N.Y. Order, along with Plaintiffs' decision to appeal, further strengthens the case for the stay.[5]

Moreover, the decision in *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7 (E.D.N.Y. 2007), on which Plaintiffs rely, is inapposite.  There, the court denied the defendants' request for a stay pending *their own* interlocutory appeal on the ground that it was unreasonable for the defendants to try to delay the case further when it was their own decision to pursue an appeal.  *Id.* at 13.  Here, by contrast, it is *Plaintiffs* that have chosen to appeal the S.D.N.Y. Order, thereby denying Defendants and this Court the clarity as to the scope of Plaintiffs' own claims that this Court has held is necessary to proceed with discovery.

*Second*, absent a Second Circuit reversal of the S.D.N.Y Order, Plaintiffs cannot conduct discovery based on the current FAC because that complaint must be dismissed.  The *factual*

---

[4]   Defendants would anticipate substantial disputes as to what, if any, additional discovery would be warranted under those circumstances, and both those disputes and the disjointed nature of any supplemental discovery would impose substantial burdens on the parties and the Court that can be avoided by staying discovery until the scope of this case is resolved.

[5]   Plaintiffs' assertion that Defendants somehow created the lack of clarity by seeking to enforce the settlement in New York after Judge Gonzales denied Defendants' motion to dismiss is nonsense.  Any issue about the timing of Defendant's motion to enforce the settlement was definitively put to rest by the New York Court.  (Dkt. No. 668 at 14-16.)  The lack of clarity as to the scope of Plaintiffs' claims falls squarely on Plaintiffs and their FAC, which hopelessly jumbles allegations of released conduct with speculation about post-June 30, 2014 conduct.

allegations (as opposed to conjecture and speculation) on which the FAC is predicated consist almost entirely of allegations about Defendants' development, adoption, and implementation of the CDS auction protocol prior to June 30, 2014.  (*See, e.g.*, FAC ¶¶ 134-150; 336-354; 364; 369.)[6]  The New York Court's permanent injunction barring Plaintiffs from pursuing any claims against Defendants based on conduct occurring before June 30, 2014 compels the dismissal of the FAC.  *See*, *e.g.*, *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 119 (2d Cir. 2011) (affirming district court's order requiring plaintiffs to dismiss their complaint to the extent that it asserted released claims); *Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 743-45 (9th Cir. 2006) (affirming district court's dismissal of plaintiffs' complaint following district court's order that plaintiffs show cause why their complaint should not be dismissed as barred by the settlement in *Wal-Mart Stores, Inc. v. Visa, U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)).  In addition, the S.D.N.Y. Order compels the dismissal of certain parties from the case, and proceeding with discovery while the status of these parties is unclear would be inefficient and wasteful.  Plaintiff ERB, for example, alleges that it was affected solely by auctions that occurred before June 30, 2014.  (*Id.* ¶¶ 482-510.)  Accordingly, ERB is permanently barred by the New York Court's injunction from pursuing this case at all.  Similarly, Defendant NatWest Markets Securities Inc. (f/k/a RBS Securities Inc.) ("NatWest") was not involved in any CDS auctions

---

[6]   Plaintiffs allege that Defendants conspired to control CDS auctions since at least as early as 2005 through a "working group" of senior bank representatives who, among other things, allegedly held "secret meetings" in New York before June 30, 2014 in furtherance of the alleged conspiracy.  (FAC ¶ 516.)  According to the FAC, Defendants also pursued the purported conspiracy through "board or committee meetings" of entities, including ISDA and Markit, on which senior bank personnel sat prior to June 30, 2014.  (*See, e.g.*, *id.* ¶¶ 27-28, 104, 109.)  Plaintiffs allege that Defendants used Creditex and Markit—two entities in which they held ownership and board positions before June 30, 2014—as direct participants in the scheme.  (*See, e.g.*, *id.* ¶¶ 98-110, 141, 143.)  The district court highlighted these same points in its ruling on Defendants' motion to dismiss.  *In re CDS Auctions Litig.*, 2023 WL 3821337, at *2, 25, 32 (D.N.M. June 5, 2023).  Moreover, Plaintiffs have effectively conceded that any post-June 30, 2014 conduct are merely a continuation of harm from conduct pre-June 30, 2014.  (*See* ECF No. 161 at 47, n.35 ("Each CDS auction was a new event that gave rise to its own discrete harm, which reset the limitations period for all of Plaintiffs' claims pursuant to the continuing violations doctrine.").)

after June 30, 2014.[7]  Consequently, under the S.D.N.Y. Order, Plaintiffs are barred from

pursuing their claims against NatWest, including by seeking discovery against NatWest.[8]

Plaintiffs are also mistaken that their purported statistical allegations excuse the need to

amend their complaint.  Those statistical allegations expressly included auctions from *2005* to

the present.  (FAC ¶ 249.)  Because Plaintiffs are now barred from pursuing claims based on any

conduct occurring before June 30, 2014, they can no longer rely on their purported econometric

analysis that allegedly includes the results of auctions that occurred during that time period.

Contrary to Plaintiffs' contentions, Defendants do not claim that the S.D.N.Y. Order

grants them immunity in perpetuity for alleged misconduct after June 30, 2014.  But if, following

the dismissal of the FAC, Plaintiffs wish to try to state a viable claim based solely on

Defendants' purported conduct after June 30, 2014, "their proper course is to file a fresh

complaint."  *Reyn's Pasta Bella*, 442 F.3d at 749 ("If Plaintiffs wish to state a claim based on

Defendants' alleged price-fixing after [the effective date of the release], their proper course is to

file a fresh complaint.").  Defendants would then be entitled to test whether an amended

complaint states a viable claim under Federal Rule of Civil Procedure 12(b).  Only if Plaintiffs

have filed an amended complaint that states a viable claim under Rule 12(b) may they then be

---

[7]     Plaintiffs' assertion that the deficiencies in the FAC, which does not plead ERB or NatWest auction
involvement after June 30, 2014, "is merely the starting point" because they are entitled to develop their case
during discovery, is incorrect as a matter of law.  *See, e.g.*, *United States v. 2121 Celeste Rd. SW, Albuquerque,
N.M.*, 307 F.R.D. 572, 584 (D.N.M. 2015) ("the parties . . . have no entitlement to discovery to develop new
claims or defenses that are not already identified in the pleadings").  Rather, their suggestion that ERB might
have additional bases for recovery not revealed in the FAC further supports Defendants' argument that, if
Plaintiffs want to continue to pursue this case, they must file a fresh complaint.

[8]     If Plaintiffs refuse voluntarily to dismiss the FAC, and if this Court were disinclined to order Plaintiffs to show
cause why the FAC should not be dismissed, then Defendants are prepared to move against the FAC under Rule
12(c).  At minimum, the stay should remain in place pending resolution of any Rule 12(c) or similarly
dispositive motion.

permitted to engage in discovery based on the post-June 30, 2014 allegations contained in that new complaint.

In sum, the need for amendment and motion practice means that the case for staying discovery is stronger now than it was when the Court first entered the stay. The parties and the Court should not undertake the burdens necessary to conform the pleadings to the S.D.N.Y. Order while that Order remains subject to Plaintiffs' appeal. This Court recognized the "significant energy" necessary to put this case on course for an appropriate and efficient discovery process, and any attempt to proceed with amendment, motion practice, and ultimately discovery pending Plaintiffs' appeal of the S.D.N.Y. Order would "risk undoing those efforts by allowing discovery to become tangled." (Dkt. No. 230 at 1.)

## II.    The Extent to Which Discovery May Proceed in the District of New Mexico

**Plaintiffs' Position:** For the period beginning July 1, 2014 and going forward, which is outside the scope of the S.D.N.Y. Opinion, discovery should proceed in accordance with the applicable Federal and Local Rules.

Discovery of the pre-June 30, 2014 period is appropriate — no matter how the Second Circuit rules — because the Plaintiffs allege independent unlawful conduct occurring after June 30, 2014, and discovery pre-dating June 30, 2014 is relevant to proving that non-released conduct. *See, e.g.*, *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, No. 01-CV-2410-JAR, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003) (recognizing the "general policy of allowing liberal discovery in antitrust cases . . . when there are allegations of conspiracy and where broad discovery may be needed to uncover evidence of invidious design, pattern, or intent") (citations

and quotations omitted).[9] Nonetheless, Plaintiffs propose a *focused* approach to discovery for the period June 30, 2014 and earlier, given the S.D.N.Y.'s ruling.

Although the parties have not agreed to a discovery protocol or served any discovery yet, discovery in this case will likely proceed as it does in most complex litigation — with the identification of custodians and non-custodial data sources, the application and revision of search terms, the exchange of search term reports, the collection of structured (quantitative) data, and so on. The Plaintiffs will propose narrower discovery for the pre-June 30, 2014 period, which will likely include a narrower set of search terms and a smaller set of custodians for that period. The Plaintiffs' focused approach will limit Defendants' burdens regarding pre-June 30, 2014 discovery during the pendency of the appeal while permitting the Plaintiffs to develop facts regarding the earlier period. Indeed, as alleged by Plaintiffs, Defendants' conspiracy did not simply spring into existence on June 30, 2014, but rather was planned and instituted starting approximately a decade earlier, and Plaintiffs are entitled to discovery during that earlier period in order to prove Defendants' intent and liability in service of Plaintiffs' post-June 30, 2014 claims, which the S.D.N.Y. ruled were not released. If the Plaintiffs are successful on appeal, the information learned during this focused discovery will enable the parties to efficiently

---

[9]   The cases on which Defendants rely for their assertion that the settlement release absolves them from pre-June 30, 2014 discovery are easily distinguishable. In *Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646 (9th Cir. 1980), the court was focused on shielding *a non-party* from burdensome discovery. *See Douglass v. Nat'l Federation of Independent Business*, 1995 WL 579649, at *2 (9th Cir. Oct. 2, 1995) (explaining that in *Dart*, "We, with our knowledge of the burdens that litigation can impose on non-parties, decided that Dart should be left at peace."). *See also Tag Grp. S.A. v. Haas & Haynie Corp.*, 637 F. Supp. 121, 123 (S.D.N.Y. 1986) ("[T]he decision in *Dart* should be strictly confined to its facts."). Defendants cite to a portion of the opinion in *S.R.J.F., Inc. v. Dairy Farmers of America, Inc.*, 2023 WL 6246481, at *1 (D. Vt. Sept. 26, 2023), reciting the procedural history of the action. It refers to a stay of discovery while a motion for summary judgment was pending. It does not support Defendants' assertion that all discovery concerning pre-June 30, 2014 conduct should be barred. In *Quint v. Vail Resorts, Inc.*, the plaintiffs asserted claims pursuant to the Fair Labor Standards Act in the District of Colorado; identical claims had already been brought in a parallel case in California state court. 2023 WL 4410458, at *1 (D. Colo. June 16, 2023). When the California case was settled, the court granted a stay of proceedings in the District of Colorado while the California settlement was being finalized. *Id.* at *4.

13

supplement the pre-June 30, 2014 discovery. The Court need not make any decisions right now about the precise contours of discovery — the parties have not yet discussed the parameters of discovery, including sources of relevant information and search methodologies, and each discovery dispute should be assessed when it is ripe and only after the parties have had a chance to resolve it without court action.

**Defendants' Position:**  For all the reasons stated above, the stay should remain in effect and discovery should not be permitted to begin.  Moreover, if this Court were to permit discovery to begin at any point, then, given the terms of the injunction of the S.D.N.Y. Order, that discovery must be limited to the period after June 30, 2014.  Plaintiffs erroneously believe that they may seek discovery about, and continue to base their claims on, alleged agreements, conduct, and events occurring as long ago as "a decade" before June 30, 2014, as long as they seek damages only for the period after June 30, 2014.  But Plaintiffs have been "permanently barred and enjoined" from pursuing "any and all manner of claims, causes of action, cross-claims, counterclaims, suits, demands, actions, *rights*, charges, liabilities, losses, *obligations*, and controversies of any kind, nature, or description whatsoever" for alleged CDS-related conduct occurring before June 30, 2014.  (Dkt. No. 231-1 at 2-3 (emphasis added).)  The S.D.N.Y. Order is not a mere limitation on Plaintiffs' damages period, and Plaintiffs' reliance on statute of limitations cases to assert that they may seek discovery about released conduct is misplaced. Under the S.D.N.Y. Order, Plaintiffs are absolutely and permanently forbidden from basing their claims on ***any*** CDS-related conduct occurring before June 30, 2014.  Such released conduct is therefore irrelevant to any claim that Plaintiffs are now permitted to assert, and the New York Court's injunction ensures Defendants' right to be free from any obligation to engage in expensive, time-consuming discovery related to that released conduct.  *See*, *e.g.*, *Dart Industries*

*Co. v. Westwood Chemical Co.*, 649 F.2d 646, 648-50 (9th Cir. 1980) (broad settlement release of "any rights" precluded all discovery related to released conduct because the settling party had paid "substantial consideration" ($700,000) to buy "peace" from a broad array of obligations, *including discovery into released conduct*); *S.R.J.F., Inc. v. Dairy Farmers of Am., Inc.*, No. 2:22-cv-00147, 2023 WL 6246481, at *1 (D. Vt. Sept. 26, 2023) ("if SRJF's claims are based on released conduct, the court should not allow discovery regarding that conduct"); *Quint v. Vail Resorts, Inc.*, No. 20-cv-03569-DDD-NRN, 2023 WL 4410458, at *4 (D. Colo. June 16, 2023) (defendant would suffer "undue burden" if it were required to "produce discovery regarding employees who have already released their claims against it").[10]

Defendants in the instant case paid substantial consideration (more than $1.8 billion) for peace from a broad array of rights and obligations concerning CDS-related conduct prior to June 30, 2014. Under the terms of the S.D.N.Y. Order, Plaintiffs are "permanently barred and enjoined" from seeking discovery of documents, data, or other information concerning CDS-related conduct and events occurring before June 30, 2014.

---

[10]   Plaintiffs' reliance on *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, No. 01-CV-2410-JAR, 2003 WL 21939019 (D. Kan. July 22, 2003), is misplaced. That case does not support Plaintiffs' assertion that, notwithstanding the S.D.N.Y Order, they should be permitted to seek discovery about alleged CDS-related conduct during the nine-year period before June 30, 2014. In that case, the court permitted discovery into the defendant's alleged pricing conduct for eighteen months *after* the date of the plaintiffs' last purchases of the subject product because "evidence of invidious design, pattern, or intent" during that later period was relevant to the plaintiffs' antitrust claim during an earlier period. *Id.* at *4. Here, by contrast, Plaintiffs may not base their remaining claims on any evidence of CDS-related conduct occurring before June 30, 2014. The S.D.N.Y. Order renders all such evidence wholly irrelevant to Plaintiffs' remaining claims. Even under the most liberal discovery policy, Plaintiffs are not entitled to engage in expensive, time-consuming discovery about such conduct.

Dated:  March 1, 2024                    Respectfully submitted,

                                         RAÚL TORREZ
                                         NEW MEXICO ATTORNEY GENERAL

                                         Julie Meade
                                         Division Director, Consumer and Environmental
                                         Protection Division
                                         New Mexico Office of the Attorney General
                                         408 Galisteo St.
                                         Santa Fe, NM 87501
                                         Tel: (505) 490-4885
                                         jmeade@nmag.gov

                                         */s/ Victor A. Hall*
                                         Victor A. Hall
                                         P.O. Drawer 1508
                                         Santa Fe, NM 87504-1508
                                         Tel.: (505) 717-3500
                                         vhall@nmag.gov

                                         *Counsel for Plaintiffs SIC, PERA, and ERB*


                                         KIRBY McINERNEY LLP

                                         By: */s/ David E. Kovel*
                                         David E. Kovel
                                         Karen M. Lerner
                                         Andrew M. McNeela
                                         Thomas L. Popejoy
                                         250 Park Avenue, Suite 820
                                         New York, NY 10177
                                         Tel. (212) 371-6600
                                         dkovel@kmllp.com
                                         klerner@kmllp.com
                                         amcneela@kmllp.com
                                         tpopejoy@kmllp.com

                                         Anthony E. Maneiro
                                         211 West Wacker Drive, Suite 550
                                         Chicago, IL 60606
                                         Tel. (312) 767-5180
                                         amaneiro@kmllp.com

                                         *Interim Co-Lead Counsel for the Class*

16

GILBERT LLP

By: *Richard J. Leveridge*
Richard J. Leveridge
Jason Rubinstein
Chris Leonardo (pro hac vice forthcoming)
Alison D. Gaske
Ethan H. Kaminsky
700 Pennsylvania Avenue, S.E., Suite 400
Washington, D.C. 20003
Tel. (202) 772-1918
leveridger@GilbertLegal.com
rubinsteinj@GilbertLegal.com
leonardoc@GilbertLegal.com
gaskea@GilbertLegal.com
kaminskye@GilbertLegal.com

*Interim Co-Lead Counsel for the Class*

BERGER MONTAGUE PC

By: */s Michael Dell'Angelo*
Michael Dell'Angelo
Michael J. Kane
Candice J. Enders
Zachary Caplan
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. (215) 875-3080
mdellangelo@bm.net
mkane@bm.net
cenders@bm.net
zcaplan@bm.net

*Counsel for the Class*

FARRA & WANG PLLC

Adam H. Farra
Times Wang
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
Tel. (202) 505-5989
afarra@farrawang.com
twang@farrawang.com

*Counsel for the Class*

17

BROWNSTEIN HYATT FARBER SCHRECK,
LLP

By: */s/ Eric R. Burris*

Eric R. Burris
Debashree Nandy
201 Third St. NW, Suite 1800
Albuquerque, New Mexico 87102
Telephone:  (505) 244-0770
Facsimile:  (505) 244-9266
eburris@bhfs.com
rnandy@bhfs.com

Jay B. Kasner
Karen Lent
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Facsimile:  (917) 777-3000
Jay.Kasner@skadden.com
Karen.Lent@skadden.com

*Attorneys for Defendants Citibank, N.A. and
Citigroup Global Markets Inc.*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Andrew G. Schultz*
Andrew G. Schultz
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
Email:  aschultz@rodey.com

Robert Sperling
Katherine B. Forrest
Staci Yablon
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
RSperling@paulweiss.com
SYablon@paulweiss.com
KForrest@paulweiss.com

*Attorneys for Defendants Goldman Sachs & Co. LLC and Goldman Sachs International*

SNELL & WILMER LLP

By: */s/ Gregory J. Marshall*

Gregory J. Marshall
201 Third Street N.W. #500
Albuquerque, New Mexico 87102
Telephone:  602-382-6514
Facsimile:  602-382-6070
E-mail:  gmarshall@swlaw.com

Paul S. Mishkin
Sheila R. Adams
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Fax:  (212) 450-4800
paul.mishkin@davispolk.com
sheila.adams@davispolk.com

*Attorneys for Defendants Bank of America, N.A.
and BofA Securities, Inc.*

ATKINSON, BAKER & RODRIGUEZ, P.C.

By: */s/ Douglas A. Baker*

Douglas A. Baker
Justin D. Rodriguez
201 Third Street NW, Suite 1850
Albuquerque, NM 87102
Telephone:  (505) 764-8111
dbaker@abrfirm.com
jrodriguez@abrfirm.com

Jeffrey T. Scott
Matthew J. Porpora
Jonathan S. Carter
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
scottj@sullcrom.com
porporam@sullcrom.com
carterjo@sullcrom.com

Renata B. Hesse
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW Suite 700
Washington, DC 20006-5215
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330
hesser@sullcrom.com

*Attorneys for Defendants Barclays Bank PLC and
Barclays Capital Inc.*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Andrew G. Schultz*

Andrew G. Schultz
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
aschultz@rodey.com

Joshua A. Goldberg
Amy N. Vegari
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 336-2000
jgoldberg@pbwt.com
avegari@pbwt.com

*Attorneys for Defendants BNP Paribas S.A. and BNP Paribas Securities Corp.*

BARDACKE ALLISON LLP

By: */s/ Benjamin Allison*

Benjamin Allison
141 East Palace Avenue
Santa Fe, NM 87501
Telephone:  (505) 995-8000
Facsimile:  (505) 672-7037
ben@bardackeallison.com

David G. Januszewski
Herbert S. Washer
Jason M. Hall
Margaret A. Barone
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420
djanuszewski@cahill.com
hwasher@cahill.com
jhall@cahill.com
mbarone@cahill.com

*Attorneys for Defendants Credit Suisse AG, Credit Suisse Securities (USA) LLC, and Credit Suisse Capital LLC*

ALLEN LAW FIRM, LLC

By: */s/ Meena H. Allen*

Meena H. Allen
6121 Indian School Road NE, Suite 230
Albuquerque, NM 87110
Telephone:  (505) 298-9400
Facsimile:  (505) 298-7070
mallen@mallen-law.com

John Terzaken
Adrienne V. Baxley
Laurel Fresquez
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, DC 20001
Telephone:  (202) 636-5500
Facsimile:  (202) 636-5502
john.terzaken@stblaw.com
adrienne.baxley@stblaw.com
laurel.fresquez@stblaw.com

*Attorneys for Defendants Deutsche Bank AG and
Deutsche Bank Securities Inc.*

RODEY, DICKASON, SLOAN, AKIN & ROBB,
P.A.

By: */s/ Andrew G. Schultz*

Andrew G. Schultz
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
aschultz@rodey.com

Robert D. Wick
John S. Playforth
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291
rwick@cov.com
jplayforth@cov.com

*Attorneys for Defendants JPMorgan Chase Bank,
N.A. and J.P. Morgan Securities LLC*

HOLLAND & HART LLP

By: */s/ John C. Anderson*

John C. Anderson
110 N. Guadalupe St., Suite 1
Santa Fe, NM 87507
Telephone:  (505) 954-7290
JCAnderson@hollandhart.com

Michael A. Paskin
Lauren M. Rosenberg
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
mpaskin@cravath.com
lrosenberg@cravath.com

*Attorneys for Defendants Morgan Stanley & Co.*
*LLC, Morgan Stanley & Co. International plc, and*
*Morgan Stanley Capital Services LLC*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Andrew G. Schultz*

Andrew G. Schultz
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
aschultz@rodey.com

James R. Warnot, Jr.
Patrick C. Ashby
Nicole E. Jerry
LINKLATERS LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 903-9000
james.warnot@linklaters.com
patrick.ashby@linklaters.com
nicolejerry@linklaters.com

Adam S. Lurie
LINKLATERS LLP
601 13th St. NW
Suite 400
Washington, DC 20005
Telephone:  (202) 654-9227
adam.lurie@linklaters.com

*Attorneys for Defendant NatWest Markets*
*Securities Inc. (f/k/a RBS Securities Inc.)*