# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

IN RE: CREDIT DEFAULT SWAPS
AUCTIONS LITIGATION

Case No.: 1:21-cv-00606-KJG-JHR

## JOINT STATUS REPORT

Pursuant to this Court's June 20, 2025 Order (Dkt. No. 248), the parties jointly submit the following status report "indicating how they intend to proceed" in light of the Second Circuit's recent summary order. *In re Credit Default Swaps Antitrust Litig.*, No. 24-635-cv, Dkt. No. 146.1 (2d Cir. May 20, 2025).

### I.    Plaintiffs' Position

Filed in June 2021, *see* Dkt. 1, this case alleges that the defendant banks ("Defendants"), beginning in 2005, rigged the credit default swap ("CDS") auction process by making auction submissions that were the product of coordination and unlawful information sharing, in violation of federal antitrust law and the Commodity Exchange Act. *See, e.g.*, Dkt. 151 ¶ 17. After extensive motion practice, Judge Gonzales overwhelmingly denied Defendants' motion to dismiss in his June 2023 73-page opinion, finding that the complaint plausibly alleged that "Defendants' conduct 'represents concerted action amongst a group of horizontal competitors to artificially depress (or artificially inflate, in certain auctions) a benchmark price to benefit the horizontal competitors at the expense of market participants' and 'constitutes an agreement by horizontal competitors (Defendants) to rig their bids into the CDS auctions so as to fix the final auction price." *In re Credit Default Swaps Auctions Litig.*, 710 F. Supp. 3d 895, 929 (D.N.M. 2023).

Rather than face discovery, Defendants fled to the Southern District of New York and obtained an injunction on January 26, 2024 barring Plaintiffs from pursuing any claims against

Defendants in this case "arising from [the banks'] conduct occurring prior to June 30, 2014[.]" *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2024 WL 303802, at *5 (S.D.N.Y. Jan. 26, 2024) ("SDNY Order"). Plaintiffs appealed. On May 20, 2025, the Second Circuit issued an unpublished summary order dismissing the appeal for lack of jurisdiction, concluding that the Southern District of New York's injunction was not a final decision under 28 U.S.C. § 1291 or otherwise appropriately appealable under 28 U.S.C. § 1292(a)(1). *BNP Paribas v. New Mexico State Inv. Council*, No. 24-635-CV, 2025 WL 1443654, at *2 (2d Cir. May 20, 2025).

Given that the class period alleges that Defendants rigged auctions starting in 2005 and continuing to the present day, Plaintiffs are prepared to stipulate that they will not seek damages for auctions that took place prior to July 1, 2014 and that the class period begins on July 1, 2014. That resolves this issue. Plaintiffs and Defendants have already submitted a Joint Status Report and proposed discovery schedule, *see* Dkt. 218, and there are a small number of discrete discovery disputes that are already teed up for the Court in that filing. The Court should resolve those disputes, enter a discovery schedule, and allow the first document to be produced in this four-year old case.[1]

During a meet and confer on June 13, 2025, Defendants expressed their view that "there's no case left." The SDNY Order said no such thing. The SDNY Order necessarily left untouched Plaintiffs' claims for damages based on Defendants' conduct with respect to auctions occurring after June 30, 2014—which makes sense. Plaintiffs' claims are about price submission coordination and information sharing, and therefore any Defendants who engaged in pricing

---

[1] As to Defendants' observations about Plaintiff ERB and Defendant NatWest, Defendants (as of July 10) have never asked Plaintiffs to consider dismissing ERB or NatWest, and NatWest's counsel has never contacted Plaintiffs' counsel.

manipulation and information sharing *after* June 30, 2014 are necessarily liable to Plaintiffs they cheated.

The premise underlying Defendants' stance is that if they started conspiring and manipulating prices before June 30, 2014—say, on June 29, 2014—then they can continue breaking the law and may do so freely (apparently) for all time. Unsurprisingly, courts have repeatedly rejected that extraordinary argument—no defendant can buy a release for conduct *in the future*. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 138 (2d Cir. 2011) ([T]here can be no question that the Belands' claims, to the extent that they involve conduct occurring *after* the Class Period, cannot be Released Claims."); *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003) (Sotomayor, J.) ("If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion."); *Harkins Amusement Enters., Inc. v. Harry Nace Co.*, 890 F.2d 181, 183 (9th Cir. 1989) ("It is elementary that new antitrust violations may be alleged after the date covered by . . . settlement of antitrust claims covering an earlier period."). In Defendants' view, a plaintiff could not mention a price-fixing conspiracy that occurred in the released period even if defendants agreed to re-launch the exact same price-fixing conspiracy in the post-release period and brought a suit to stop it. That doesn't make sense, and it isn't the law. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) (holding that an antitrust judgment could not preclude post-judgment claims challenging the same anticompetitive behavior). Because the SDNY Order does not and cannot bar or enjoin Plaintiffs from pursuing claims based on Defendants' post-July 1, 2014 conduct, Defendants' request for more Rule 12 motions practice should be rejected.

Judge Gonzales sustained Plaintiffs' claims because the persuasive, defendant-specific econometric analyses showed—to a statistically significant degree—that Defendants engaged in

coordinated pricing and market manipulation across auctions. *See In re Credit Default Swaps Auctions Litig.*, No. CV 21-0606 KG/DLM, 2023 WL 3821337, at *32 (D.N.M. June 5, 2023) ("As an initial matter, the Court agrees with Plaintiffs that the statistical allegations, *standing alone*, allege a plausible antitrust conspiracy sufficient to deny the Motion as to these claims.") (emphasis added). The fact that Defendants structured the auctions as a dealer-only club and held them with rules established years beforehand was icing on the cake. *Id*. Excising allegations from the FAC referring to Defendants' development, adoption, and implementation of the CDS auction protocol prior to June 30, 2014 would thus change nothing with respect to Defendants' failed motion to dismiss.

Defendants have previously argued that Plaintiffs can no longer rely on their statistical analysis because it "expressly included pre-June 30, 2014 auctions." Dkt. 234 at 11. Not so. The statistical analysis proves that Defendants rigged all of the auctions, but it does not rely upon or assert a causal link between any two auctions to support that determination. The SDNY Order precludes Plaintiffs from using that proof to pursue claims for Defendants' auction rigging before June 30, 2014. But it does not preclude Plaintiffs from using that proof to pursue claims for auction rigging that took place after July 1, 2014.

Even if Plaintiffs cannot pursue claims against Defendants for auctions occurring before June 30, 2014, they can still plead allegations—and seek discovery in support of those allegations —to support claims against Defendants for auctions occurring after June 30, 2014.  In other words, the release operates as nothing more than an affirmative defense like the statute of limitations, which likewise prevents plaintiffs from pursuing claims against defendants for conduct occurring outside of a specific window in time but does not prevent plaintiffs from pleading facts occurring outside the limitations period in support of their claims for conduct within the limitations period.

*See, e.g., Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1247–48 (10th Cir. 2016) (recognizing doctrine of continuing conspiracy applied, and allowing plaintiff to pursue claims for acts occurring within the limitations period based on a pleading that alleged a conspiracy beginning outside the limitations period); *Champagne Metals v. Ken-Mac Metals, Inc*., 458 F.3d 1073, 1088 (10th Cir. 2006) (same); *see also V5 Techs., LLC v. Switch, Ltd*., No. 217CV02349KJDVCF, 2021 WL 5310582, at *2 (D. Nev. Nov. 12, 2021) (allowing Plaintiff to introduce and plead "background evidence to establish a continuing course of conduct" for unreleased claims outside the limitations period even though the same conduct was previously released).

The District of New Mexico has similarly allowed plaintiffs to include allegations of conduct that cannot be recovered upon in complaints in support of claims that can be pursued. In *Webb v. Harris*, No. CV 02-707 JC/KBM, 2003 WL 27385430, at *2 (D.N.M. Mar. 25, 2003), the plaintiff brought an initial discrimination suit against the defendant that was dismissed with prejudice in an order stating that the plaintiff would "not plead or otherwise advance or allege any additional federal claims of any type based upon the Plaintiff's allegations set forth in Plaintiff's complaint." *Id*. at *2. When the plaintiff then brought a second suit, alleging that the same defendant retaliated against her for bringing the first complaint, the defendant moved to dismiss, arguing that the retaliation claim was "based upon" the plaintiff's allegations in the first case. *Id*. at *3. But the Court denied the motion to dismiss, holding that the plaintiff "sufficiently asserts that her termination occurred subsequent to the Stipulated Order, and it is well-settled that such claims are not barred under claim preclusion." *Id*. (citing *Lawlor v. Nat'l Screen Serv.,* 349 U.S. 322, 328 (1955)).

Additionally, Defendants' position suffers from the delusion that Judge Cote in the Southern District of New York can dictate not only the allegations that this Court can find permissibly support cognizable violations of the law in a complaint filed in the District of New Mexico, but can entirely muzzle Plaintiffs from even mentioning the existence of such misconduct (as if the world did not exist prior to the date of the release). To the contrary: to the extent Defendants believe that, for example, Plaintiffs cannot even speak about—let alone plead and rely on evidence of—the formation of an illegal agreement prior to June 30, 2014 to show that Defendants rigged certain auctions after June 30, 2014, then their recourse is to raise that remarkable position with Judge Cote, such as by seeking clarification of the SDNY Order. Defendants, however, cannot press their quixotic interpretation of that order to handcuff this Court's authority to determine which allegations it will permit Plaintiffs to advance in this action.

For all these reasons, discovery should proceed in accordance with the applicable Federal and Local Rules. The Court need not make any decisions right now about the precise contours of discovery—the parties have not yet discussed the parameters of discovery, including sources of relevant information and search methodologies, and each discovery dispute should be assessed when it is ripe and only after the parties have had a chance to resolve it without court action. But there is no reason for any additional delay. This case has been pending since June 2021. The Court denied the motion to dismiss in June 2023. As this Court previously recognized, the "Plaintiffs certainly have an interest in rapidly moving forward," and it is time for this case—now more than four years old—to proceed to discovery. *In re Credit Default Swaps Auctions Litig.,* No. 1:21-CV0606 KG/DLM, 2024 WL 264035, at *4 (D.N.M. Jan. 24, 2024).

## II.    Defendants' Position

Plaintiffs acknowledge that they have been enjoined from pursuing claims "arising from [Defendants'] conduct occurring prior to June 30, 2014." *Supra* at 2. And yet, their First Amended Complaint (FAC), which they have chosen not to amend, relies—in Plaintiffs' own words—on allegations arising from "Defendants' development, adoption, and implementation of the CDS auction protocol," among other topics, "prior to June 30, 2014." *Supra* at 4. Indeed, Plaintiffs' existing claims—including their foundational theory, statistical analysis, auction allegations, and damages—fundamentally rely on pre-June 30, 2014 conduct, all of which is precluded by the S.D.N.Y. Order. That cannot be justified.

In response, Plaintiffs suggest that this Court should take it on faith that they have adequately pled claims arising out of post-Release conduct, but that is not what the FAC asserts. To the contrary, having reviewed the FAC, the Southern District of New York (Judge Denise L. Cote) found: "The New Mexico plaintiffs' claims share an identical factual predicate with the Released Claims." *In re Credit Default Swaps Antitrust Litig.*, 2024 WL 303802, at *3 (S.D.N.Y. Jan. 26, 2024). The Second Circuit agreed. *BNP Paribas* v. *New Mexico State Inv. Council*, 2025 WL 1443654, at *3 (2d Cir. May 20, 2025). Plaintiffs' refusal to withdraw the FAC puts them in contempt of Judge Cote's order and leaves them with a pleading that contains claims they have been enjoined from prosecuting. The proper course is therefore dismissal of Plaintiffs' defective complaint. And that dismissal should be with prejudice because, when stripped of claims arising out of pre-Release conduct, which are barred, Plaintiffs have no viable claim for relief remaining.[2]

Accordingly, while reserving all rights to which they may be entitled, Defendants intend to move promptly for judgment on the pleadings under Rule 12(c). Defendants will meet and

---

[2] In a recent meet and confer, Defendants explained to Plaintiffs that the FAC is defective for the reasons set forth in the opinion accompanying the S.D.N.Y. Order. Plaintiffs have nevertheless opted to proceed with the FAC.

confer with Plaintiffs on a briefing schedule to propose to the Court for that motion. Insofar as Plaintiffs are concerned about the pace of this action, Defendants are prepared to agree to a schedule that completes briefing in short order. In the interim, and until such motion is resolved, the existing stay of discovery should remain in place.

A.      The FAC Should Be Dismissed.

Plaintiffs' FAC should be dismissed because it asserts claims that Plaintiffs have already released. The Southern District of New York reviewed the FAC and found that it asserted an *identical* factual predicate to claims that Plaintiffs had released. As a result, the court "permanently barred and enjoined" Plaintiffs in this action from asserting "any and all manner of claims, causes of action, crossclaims, counterclaims, suits, demands, actions, rights, charges, liabilities, losses, obligations, and controversies of any kind, nature, or description whatsoever" arising from CDS-related conduct occurring before June 30, 2014. *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-02476, Dkt. No. 667 at 2–3 (S.D.N.Y. Jan. 26, 2024). Plaintiffs appealed that order, and the Second Circuit dismissed their appeal. Plaintiffs now try to minimize the significance of the Second Circuit's decision by stating that it was a dismissal for lack of jurisdiction. *See supra* at 2. But the appellate Panel, like Judge Cote, determined as part of its holding that "the settled claims and the claims [Plaintiffs] now seek to pursue share the same set of integral facts" and a "common factual predicate." *BNP Paribas*, 2025 WL 1443654, at *3. Moreover, the reason the Second Circuit concluded it did not have jurisdiction over Plaintiffs' appeal was that Judge Cote's order "merely enforced" the existing bar on Plaintiffs' claims, which was imposed by a 2015 settlement agreement to which Plaintiffs were already bound when they filed their complaint here. *See id.* at *2.

Dismissal of the FAC is required by these orders. Yet, despite these clear rulings, Plaintiffs insist that the FAC can proceed as is, so long as they stipulate not to seek ***damages*** for conduct

pre-dating the Release.  Judge Cote's order interpreting and enforcing the Release is not so narrow that it merely limits Plaintiffs' damages period when applied to the FAC.  Rather, Plaintiffs are absolutely and permanently forbidden from basing their "claims" on—or pursuing any "rights" or "losses" from—any CDS-related ***conduct*** occurring before June 30, 2014.  Plaintiffs' make no effort to demonstrate how the allegations in the FAC—asserted when Plaintiffs themselves believed the Release was of zero applicability—actually also plead a standalone claim arising solely out of a factual predicate *different* from the Released claims, and Defendants submit that they cannot do so.

These issues cannot be resolved by Plaintiffs' say-so in a status report.  Defendants' forthcoming Rule 12(c) motion will detail several grounds for dismissing the FAC, including:

***First***, the FAC does not allege any independently actionable conspiracy after June 30, 2014.  Rather, the central theory of the FAC is that Defendants allegedly agreed to hard-wire a conspiracy into the CDS market prior to June 30, 2014.  Any post-Release injury to Plaintiffs is alleged to be the result of that same alleged pre-Release conspiracy.  *See* FAC ¶¶ 134–50, 336–54, 364, 369.  Indeed, according to Plaintiffs, Defendants' pre-Release conduct created "the conditions ***necessary*** to effectuate a bid-rigging conspiracy."  Dkt. No. 161 at 28 (emphasis added).  And in its Opinion on Defendants' motion to dismiss the FAC, this Court relied on Plaintiffs' theory of the conspiracy, citing the "specific agreements entered into by Defendants" and the "suspicious auction rules" as allegations adequately supporting Plaintiffs' claims.  Dkt. No. 173 at 67.  That ruling now must be revisited because it is impossible to square this theory, anchored in pre-Release conduct, with the S.D.N.Y. and Second Circuit orders, which "permanently barred and enjoined" Plaintiffs from pursuing claims "arising from or relating in ***any way*** to [pre-2014] conduct" that relates "***in any way*** to any CDS Transactions or Potential Transactions."  *In re Credit Default*

*Swaps Antitrust Litig.*, No. 13-md-02476, Dkt. No. 667 at 2–3 (emphasis added); *BNP Paribas*, 2025 WL 1443654, at *2–3. That expressly includes "any joint conduct relating to potential or actual involvement, participation, or ownership in any organization, entity, working group or other group related in any way to CDS or CDS Transactions[.]" *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-02476, Dkt. No. 445-1 § 4(d)(ii), (e)(iv).

While Plaintiffs now attempt to marginalize their pre-2014 allegations as "icing on the cake," *supra* at 4, that does not match what their complaint actually alleges. As Judge Cote held, these pre-2014 "allegations that the Banks intentionally organized the CDS market to reduce transparency and restrict non-dealers from participation" are "*[c]ore* to both sets of claims"—*i.e.*, the claims asserted in the prior lawsuit, which was settled, and the claims asserted in the FAC. *In re Credit Default Swaps Antitrust Litig.*, 2024 WL 303802, at *3. Those claims are therefore precluded.[3]

Plaintiffs' own case citations confirm why dismissal is warranted. For example, Plaintiffs cite *Storey* v. *Cello Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003) (Sotomayor, J.), for the proposition that "[i]f the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion." But *Storey* went on to note, in the next sentence, that "[a]pplication of this unremarkable principle is complicated by the at-times-difficult determination of what degree of conduct is necessary to give rise to a new 'claim,' particularly where ongoing conduct is involved." *Id.* at 383–84. Here, Plaintiffs want to short-circuit that determination by having the Court *assume* they have pled what "is necessary to give

---

[3]    This position is not "remarkable," as Plaintiffs suggest. *See supra* at 6. Judge Cote's order was perfectly clear, as is its application to the FAC. The order plainly prohibits Plaintiffs from relying on conduct prior to June 30, 2014 to bring *any* claim against Defendants. In any event, Plaintiffs' suggestion that Defendants are hoping to "handcuff this Court's authority to determine which allegations it will permit Plaintiffs to advance in this action" is nonsensical when Defendants are asking this very Court to exercise its authority over this action and dismiss Plaintiffs' deficient complaint. *See supra* at 6. And to the extent that Plaintiffs are suggesting that this Court can or should overrule the order already issued by Judge Cote, such a suggestion is clearly improper.

rise to a new 'claim.'" There is no basis for the Court to do so. To the contrary, the FAC itself demonstrates that Plaintiffs have no new claims to assert—only ones that, as the Second Circuit and Judge Cote already held, are predicated on pre-Release conduct.[4]

**Second**, even if the Court were to find that the claims in the FAC are not predicated *entirely* on Released conduct, they clearly are predicated at least in part on such conduct as well as on allegations that are undated. *See, e.g.*, FAC ¶¶ 1, 5–7, 24–25, 27–32, 123–33, 145–56, 158, 160, 162–63, 175–77, 355–67, 369, 371, 375–81, 384–89, 391–417, 514–20. The Court and Defendants should not be charged with parsing through such allegations and attempting to divine which ones are barred and which are not. The FAC, as pled, provides no basis on which the Court could conclude that Plaintiffs have stated a viable claim that is consistent with the limitations imposed by the S.D.N.Y. Order.

Nor can Plaintiffs brush aside Judge Cote's order barring and enjoining claims based in "any way" on pre-2014 conduct, by stipulating that such conduct is merely "background." That characterization seriously misconstrues what the FAC actually says—including 20 pages of allegations describing "Additional Facts" that purportedly "[s]how the Defendants' Conspiracy." *See id.* ¶¶ 336–83. Most of these allegations either explicitly reference Released conduct or are undated and almost certainly refer to Released conduct. *See, e.g., id.* ¶¶ 342–53 (allegations that

---

[4]    Plaintiffs' reliance on *Webb* v. *Harris*, 2003 WL 27385430 (D.N.M. Mar. 25, 2003), is likewise misplaced. There, the court allowed an individual plaintiff to proceed with limited claims for retaliation and other harms that arose **after** the parties stipulated to an order of dismissal concerning discrimination claims, specifically because the retaliation alleged by the plaintiff stemmed from new, independent conduct by her employer that could not have been brought in the prior action. *See id.* at *8. The court relied on the principle that when a "judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even exist and which could not possibly have been sued upon in the previous case." *Id.* (citing *Lawlor* v. *Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)). It dismissed another claim asserted by the plaintiff, however, because it was "so factually similar to her broadly articulated federal claim in her first action" that it was "not sufficient to create a distinct cause of action." *Id.* Here, as discussed above, Plaintiffs wrongly suggest that the Court either has already determined that they have pled a cause of action arising out of post-Release conduct, or that the Court should assume with no basis that such a determination would be made in Plaintiffs' favor.

11

"[i]n the glare of the 2008 financial crisis," Defendants "reached certain anticompetitive agreements" at dealer working group meetings); 363–70 (inferring a "High Degree of Interdealer Communication" based on the fact that "Defendants each have (*or have had*) seats on the Determinations Committee") (emphasis added).   Plaintiffs' attempt to recast them as "background" ignores the purpose for which Plaintiffs actually offered them in the FAC—namely, to "[s]how the Defendants' Conspiracy"—and would force Defendants to defend against the very claims that Plaintiffs are enjoined from pursuing.

Plaintiffs cite inapposite cases to argue they can "plead allegations—and seek discovery in support of those allegations—to support claims against Defendants for auctions occurring after June 30, 2014."  *See supra* at 4–5 (citing *Auraria Student Hous. at the Regency, LLC* v. *Campus Vill. Apartments, LLC*, 843 F.3d 1225 (10th Cir. 2016); *Champagne Metals* v. *Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006)).   However, neither *Auraria Student Housing* nor *Champagne Metals* involved a binding release that prohibited claims arising from conspiratorial conduct during the relevant time period, and in both cases, plaintiffs' complaints were allowed to proceed because the courts specifically concluded that plaintiffs pled viable conspiratorial conduct occurring *within* the applicable statute-of-limitations period.  *See Auraria Student Housing*, 843 F.3d at 1247–48 (defendants allegedly broadened an unlawful residency requirement during the limitations period); *Champagne Metals*, 458 F.3d at 1089–90 (defendants allegedly threatened third parties during the limitations period).   Plaintiffs here are in an entirely different position. Without relying on allegations of the alleged conspiracy that Defendants supposedly formed in 2005 and "memorialized" by 2009—*i.e.*, the Released conduct—Plaintiffs are left with a handful

of isolated and threadbare allegations that fail to demonstrate an independent factual predicate for their claims.[5]

**Third**, Plaintiffs' own econometric and statistical analyses, which undergird the FAC and which the Court relied upon in denying Defendants' motions to dismiss, *see* Dkt. No. 173 at 64–67, expressly include auctions from 2005 to the present. Indeed, the FAC alleges that the econometric and statistical analyses are based on "appropriately representative data" because they rely on 115 auctions and "incorporate[] a cross-section incorporating ***all*** CDS auctions from 2005 through 2020[.]" *Id.* ¶ 332 (emphasis added). Because Plaintiffs are barred from pursuing claims based on any conduct occurring before June 30, 2014, they can no longer rely on such analyses. Plaintiffs admit that their statistical analyses include pre-2014 auction data, but now suggest for the first time that the results of those analyses would hold independent of such data. *See supra* at 4. But they have provided nothing that the Court could rely on to reach that conclusion. In particular, Plaintiffs have pled no factual allegations plausibly showing that an econometric analysis of post-Release auctions only would support their claims. *See* FAC ¶¶ 17–19, 184, 206–335, 373, 409, 415(c), 416, 419, 421–22, 534.

**Fourth**, the FAC separately violates the S.D.N.Y. Order because it asserts claims by, as well as against, parties that can no longer remain in the case given the Second Circuit and S.D.N.Y. decisions. This Court has recognized that "[i]f the Second Circuit affirms the SDNY decision," Plaintiff ERB and Defendant NatWest would have "no obligation to remain in the case." Dkt. No. 236 at 5. That is because ERB alleges harm exclusively from auctions before June 30, 2014, *see*

---

[5]     The one case Plaintiffs cite that did involve a release—*V5 Technologies, LLC* v. *Switch, Ltd.*, 2021 WL 5310582 (D. Nev. Nov. 12, 2021)—also does not support their position here. In *V5 Technologies*, the court was resolving evidentiary disputes on the eve of trial, when plaintiffs had already pled actionable conduct. Here, by contrast, Plaintiffs have not pled any actionable conduct, as Released conduct forms the heart of the FAC's alleged conspiracy. And in any event, the court in *V5 Technologies* affirmed that the plaintiff ***could not*** rely on released conduct as a basis for liability. *Id.* at *2.

FAC ¶¶ 482–510, and NatWest is not alleged to have been involved in any auctions after June 30, 2014. Yet Plaintiffs have taken no steps to dismiss these parties, and apparently want to begin discovery with them still in the case. Plaintiffs' attempt to shift blame to Defendants for their failure to dismiss these improper parties is baseless: Plaintiffs have an affirmative legal and ethical obligation to comply with the Release and S.D.N.Y. Order.[6] *See* N.M. R. Prof'l. Cond. Rule 16-301 ("A lawyer shall not bring or defend a proceeding . . . unless there is a basis in law and fact for doing so that is not frivolous . . . .").

**Fifth**, Plaintiffs define the "Class Period," for which they seek to assert claims on behalf of "all persons or entities" allegedly harmed by the settling of CDS contracts, as ***2005 to the present***. *See, e.g.*, FAC ¶¶ 544, 555, 561, 566. This includes almost a decade of Released conduct. While Plaintiffs, *supra* at 2, offer to stipulate that they will not seek pre-Release damages, they say nothing about liability. Plaintiffs also now offer to stipulate to a class period beginning on July 1, 2014, *see supra* at 2, but that is not what they plead in the FAC and they have offered no factual allegations to support that alternative class period. Permitting the case to move forward as Plaintiffs suggest thus would require ignoring the Class Period definition in the FAC and simply making assumptions about what a proper class period might be—both of which are inappropriate.

**Sixth**, Plaintiffs should be precluded from prosecuting the FAC under the doctrine of *res judicata*. All three elements necessary are met here: (i) the court-approved S.D.N.Y. settlement is entitled to the same preclusive effect as a litigated judgment; (ii) the two suits plainly

---

[6] Plaintiffs' assertion that Defendants "have never asked Plaintiffs to consider dismissing ERB or NatWest" is both unfounded and unavailing. *Supra* n.1. When confronted with the S.D.N.Y. Order and its compelled impact on these parties, instead of dismissing them, Plaintiffs represented to this Court that "Plaintiffs' pleading is not the final word on these topics; it is merely the starting point." Dkt. No. 234. If Plaintiffs position has now changed, they should immediately dismiss both parties without further delay—and for the avoidance of doubt, Defendants are prepared to execute a Fed. R. Civ. P. 41(a)(1)(A)(ii) stipulation of dismissal with prejudice of NatWest forthwith. The uncertainty of if, when, and how Plaintiffs intend to comply with the S.D.N.Y. Order, however, only underscores that the entire FAC is not viable.

concern the same controversy, as already determined by the S.D.N.Y. and Second Circuit holdings that the two actions share an identical factual predicate; and (iii) an identity of parties exists between plaintiffs in both actions, since, as the S.D.N.Y. and the Second Circuit have expressly held, Plaintiffs' interests were adequately represented in the S.D.N.Y. action.

**B.    The Existing Stay of Discovery Should Remain in Place.**

For all of the reasons the Court cited in its two prior decisions staying discovery, Dkt. Nos. 230, 236, that stay should remain in place while the Court considers Defendants' Rule 12(c) motion to dismiss the FAC.  As discussed above, Plaintiffs have failed to show—and, Defendants submit, they cannot show—that they have any viable claims for relief that survive the S.D.N.Y. Order.  But even if Plaintiffs could formulate a claim based on *some* alleged post-2014 conduct, the scope of the case would be materially different, such that it would be impractical to set appropriate parameters for discovery at this stage.  For the same reasons, starting discovery would be both inefficient and prejudicial to Defendants; the scope of the claims that remain (if any do) is at best completely unclear.  *See* Fed. R. Civ. P. 26(b)(1) (allowing parties to obtain discovery over material that is "relevant" to any "claim or defense and proportional to the needs of the case"); *Silver* v. *City of Albuquerque*, 2022 WL 9348637, at *3 (D.N.M. Oct. 14, 2022) ("[T]he potential prejudice to Defendant from proceeding with burdensome class discovery during the pendency of a motion that could result in the dismissal of the entire case is undue" and weighs in favor of staying discovery).

In addition, as set out above, the FAC on its face includes loads of allegations of pre-Release conduct offered for the express purpose of supporting claims for liability and damages that Plaintiffs are barred from pursuing, as well as parties that must be dismissed and a class period that is directly at odds with the Release.  Until the status of the complaint is settled through motion

practice, any discovery will necessarily raise the precise issues about the scope of the Release that can be resolved through Defendants' 12(c) motion and without violation of the S.D.N.Y. Order.

Allowing discovery to proceed based on the FAC would also violate Defendants' right to be free from any obligation to engage in expensive, time-consuming discovery related to Released conduct. *See, e.g.*, *Dart Indus. Co.* v. *Westwood Chemical Co.*, 649 F.2d 646, 648–50 (9th Cir. 1980) (broad settlement release entered into by "two sophisticated business organizations" precluded all discovery related to released conduct, in part because of the "potential for abuse" in allowing discovery into claims that were subject to an "unambiguous agreement for which [defendant] paid substantial consideration" ($700,000) and therefore had bought "peace"). This would impose the very type of "undue burden" that courts have cautioned against imposing when granting motions to stay discovery. *See, e.g.*, *Quint* v. *Vail Resorts, Inc.*, 2023 WL 4410458, at *4 (D. Colo. June 16, 2023) (defendant would suffer "undue burden" if it were required to "produce discovery regarding employees who have already released their claims against it").

And, if the FAC is dismissed as Defendants maintain it should be, any resources expended on discovery in the meantime will be a waste—especially considering the multiple disputes certain to arise over what kind of discovery is and is not permitted given the S.D.N.Y. and the Second Circuit orders. To the extent Plaintiffs claim any prejudice from a further stay of discovery, that results directly from their own strategic decisions—first, to allege claims despite having released them in 2015; and second, to insist on litigating those claims in spite of judicial orders stating they are barred from doing so.

In short, Defendants respectfully submit that the Court should not allow discovery to proceed before determining—on briefing and a complete record—whether Plaintiffs have any

viable claims that have not been barred by the Release and S.D.N.Y. Order, and what the scope of such claims (if any exist) encompasses.

Dated: July 11, 2025                    Respectfully submitted,

RAÚL TORREZ
NEW MEXICO ATTORNEY GENERAL

Julie Ann Meade
Deputy Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Tel. (505) 490-4885
jmeade@nmdoj.gov

*Counsel for Plaintiffs SIC, PERA, and ERB*


KIRBY McINERNEY LLP

By: */s/ David E. Kovel*

David E. Kovel
Karen M. Lerner
Andrew M. McNeela
Thomas L. Popejoy
250 Park Avenue, Suite 820
New York, NY 10177
Tel. (212) 371-6600
dkovel@kmllp.com
klerner@kmllp.com
amcneela@kmllp.com
tpopejoy@kmllp.com

*Interim Co-Lead Counsel for the Class*


GILBERT LLP

By: */s/ Richard J. Leveridge*

Richard J. Leveridge
Chris Leonardo
Alison D. Gaske
Ethan H. Kaminsky
Chelsea Krzaczek
700 Pennsylvania Avenue, SE Suite 400

Washington, D.C. 20003
Tel. (202) 772-2301
leveridger@GilbertLegal.com
leonardoc@GilbertLegal.com
gaskea@GilbertLegal.com
kaminskye@GilbertLegal.com
krzaczekc@GilbertLegal.com

*Interim Co-Lead Counsel for the Class*

BERGER MONTAGUE

By: */s/ Michael Dell'Angelo*

Michael Dell'Angelo
Michael J. Kane
Candice J. Enders
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. (215) 875-3080
mdellangelo@bm.net
mkane@bm.net
cenders@bm.net

Adam H. Farra
Times Wang
FARRA & WANG PLLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
Tel. (202) 505-5989
afarra@farrawang.com
twang@farrawang.com

*Counsel for the Plaintiffs SIC, PERA, ERB and the Class*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Charles K. Purcell*

Charles K. Purcell
Melanie B. Stambaugh
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
kpurcell@rodey.com,
mstambaugh@rodey.com

Robert Sperling
Staci Yablon
William B. Michael
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
RSperling@paulweiss.com
SYablon@paulweiss.com
wmichael@paulweiss.com

*Attorneys for Defendants Goldman Sachs & Co.*
*LLC and Goldman Sachs International*

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Eric R. Burris*

Eric R. Burris
Debashree Nandy
201 Third St. NW, Suite 1800
Albuquerque, New Mexico 87102
Telephone:  (505) 244-0770
Facsimile:  (505) 244-9266
eburris@bhfs.com
rnandy@bhfs.com

Jay B. Kasner
Karen Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Facsimile:  (917) 777-3000
Jay.Kasner@skadden.com
Karen.Lent@skadden.com

*Attorneys for Defendants Citibank, N.A. and Citigroup Global Markets Inc.*

SNELL & WILMER LLP

By: */s/ Gregory J. Marshall*

Gregory J. Marshall
201 Third Street N.W. #500
Albuquerque, New Mexico 87102
Telephone:  602-382-6514
Facsimile:  602-382-6070
E-mail:  gmarshall@swlaw.com

Sheila R. Adams
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Fax:  (212) 450-4800
sheila.adams@davispolk.com

*Attorneys for Defendants Bank of America, N.A.*
*and BofA Securities, Inc.*

ATKINSON, BAKER & RODRIGUEZ, P.C.

By: */s/ Douglas A. Baker*

Douglas A. Baker
Justin D. Rodriguez
201 Third Street NW, Suite 1850
Albuquerque, NM 87102
Telephone:  (505) 764-8111
dbaker@abrfirm.com
jrodriguez@abrfirm.com

Jeffrey T. Scott
Matthew J. Porpora
Jonathan S. Carter
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
scottj@sullcrom.com
porporam@sullcrom.com
carterjo@sullcrom.com

Renata B. Hesse
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW Suite 700
Washington, DC 20006-5215
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330
hesser@sullcrom.com

*Attorneys for Defendant Barclays Bank PLC and
Barclays Capital Inc.*

RODEY, DICKASON, SLOAN, AKIN & ROBB,
P.A.

By: */s/ Charles K. Purcell*

Charles K. Purcell
Melanie B. Stambaugh
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
kpurcell@rodey.com mstambaugh@rodey.com

Joshua A. Goldberg
Amy N. Vegari
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 336-2000
jgoldberg@pbwt.com
avegari@pbwt.com

*Attorneys for Defendant BNP Paribas S.A. and BNP
Paribas Securities Corp.*

BARDACKE ALLISON LLP

By: */s/ Benjamin Allison*

Benjamin Allison
141 East Palace Avenue
Santa Fe, NM 87501
Telephone:  (505) 995-8000
Facsimile:  (505) 672-7037
ben@bardackeallison.com

David G. Januszewski
Herbert S. Washer
Jason M. Hall
Margaret A. Barone
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420
djanuszewski@cahill.com
hwasher@cahill.com
jhall@cahill.com
mbarone@cahill.com

*Attorneys for Defendants Credit Suisse AG, Credit
Suisse Securities (USA) LLC, and Credit Suisse
Capital LLC*

ALLEN LAW FIRM, LLC

By: */s/ Meena H. Allen*

Meena H. Allen
6121 Indian School Road NE, Suite 230
Albuquerque, NM 87110
Telephone:  (505) 298-9400
Facsimile:  (505) 298-7070
mallen@mallen-law.com

John Terzaken
Adrienne V. Baxley
Laurel Fresquez
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, DC 20001
Telephone:  (202) 636-5500
Facsimile:  (202) 636-5502
john.terzaken@stblaw.com
adrienne.baxley@stblaw.com
laurel.fresquez@stblaw.com

*Attorneys for Defendants Deutsche Bank AG and Deutsche Bank Securities Inc.*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Charles K. Purcell*

Charles K. Purcell
Melanie B. Stambaugh
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
kpurcell@rodey.com mstambaugh@rodey.com

Robert D. Wick
John S. Playforth
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291
rwick@cov.com
jplayforth@cov.com

*Attorneys for Defendants JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC*

HOLLAND & HART LLP

By: */s/ John C. Anderson*

John C. Anderson
110 N. Guadalupe St., Suite 1
Santa Fe, NM 87507
Telephone:  (505) 954-7290
JCAnderson@hollandhart.com

Michael A. Paskin
Lauren M. Rosenberg
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
mpaskin@cravath.com
lrosenberg@cravath.com

*Attorneys for Defendants Morgan Stanley & Co.*
*LLC, Morgan Stanley & Co. International plc, and*
*Morgan Stanley Capital Services LLC*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Charles K. Purcell*

Charles K. Purcell
Melanie B. Stambaugh
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
kpurcell@rodey.com
mstambaugh@rodey.com

James R. Warnot, Jr.
Patrick C. Ashby
Nicole E. Jerry
LINKLATERS LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 903-9000
james.warnot@linklaters.com
patrick.ashby@linklaters.com
nicolejerry@linklaters.com

Adam S. Lurie
LINKLATERS LLP
601 13th St. NW
Suite 400
Washington, DC 20005
Telephone:  (202) 654-9227
adam.lurie@linklaters.com

*Attorneys for Defendant NatWest Markets
Securities Inc. (f/k/a RBS Securities Inc.)*