**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN RE: CREDIT DEFAULT SWAPS AUCTIONS LITIGATION | Case No.: 1:21-cv-00606-KG-DLM |

**<u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 5

      A.    The SDNY Action and Settlement.......................................................................... 5

      B.    The Present Action................................................................................................. 6

      C.    The Orders on Defendants' Motion to Enforce the SDNY Settlement ................. 7

ARGUMENT .......................................................................................................................... 9

I.     The FAC Should Be Dismissed Because It Is Inextricably Predicated on Released Conduct. ....................................................................................................................... 10

II.    The FAC Should Be Dismissed Because Any Allegations Remaining After the SDNY Order Is Applied Are Insufficient to Support an Alleged Unlawful Conspiracy. ................................................................................................................. 13

III.   Plaintiffs' Untimely Claims Should Be Dismissed........................................................ 16

IV.   The FAC Cannot Stand in Its Current Form Because There Are No Post-2014 Allegations Attributed to Plaintiff ERB and Defendant NatWest, and the FAC Is Predicated on an Impermissible Class Period. ................................................................ 18

CONCLUSION...................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

*Abeyta v. Warfield*,
    2015 WL 13665475 (D.N.M. Feb. 18, 2015) ........................................................................9

*Ballen v. Prudential Bache Sec., Inc.*,
    23 F.3d 335 (10th Cir. 1994) ...............................................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................5, 13, 14

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
    691 F. App'x 389 (9th Cir. 2017) ........................................................................................15

*Caldwell v. Univ. of N.M. Bd. of Regents*,
    679 F. Supp. 3d 1087 (D.N.M. 2023) ...................................................................................5

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
    92 F.4th 381 (2d Cir. 2024) ................................................................................................15

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
    807 F. App'x 752 (10th Cir. 2020) ..................................................................................4, 19

*Fager v. CenturyLink Commc'ns, LLC*,
    854 F.3d 1167 (10th Cir. 2016) ..........................................................................................19

*Fisher v. Owens-Corning Fiberglass Corp.*,
    868 F.2d 1175 (10th Cir. 1989) ......................................................................................4, 19

*Glenn v. First Nat'l Bank*,
    868 F.2d 368 (10th Cir. 1989) ..............................................................................................4

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112, 133 (3d Cir. 1999)........................................................................................16

*In re Briscoe*,
    448 F.3d 201 (3d Cir. 2006)................................................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)................................................................................................14

*In re Late Fee & Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014) ........................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2025 WL 2733020 (S.D.N.Y. Sept. 25, 2025)......................................................................16

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ............................................................................................14

*In re Nat'l Life Ins. Co.*,
    247 F. Supp. 2d 486 (D. Vt. 2002)..........................................................................18

*Korwek v. Hunt*,
    646 F. Supp. 953 (S.D.N.Y. 1986), *aff'd*, 827 F.2d 874 (2d Cir. 1987).................................17

*Llacua v. W. Range Ass'n*,
    930 F.3d 1161 (10th Cir. 2019) ...............................................................................13

*Mata v. Anderson*,
    685 F. Supp. 2d 1223 (D.N.M. 2010), *aff'd*, 635 F.3d 1250 (10th Cir. 2011) .......................16

*Mayor & City Council of Balt. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013)...................................................................................14

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
    911 F.3d 505 (8th Cir. 2018) .................................................................................16

*Ramirez v. Wal-Mart Stores, Inc.*,
    192 F.R.D. 303 (D.N.M. 2000)..................................................................................5

*Strickland v. Madden Sales & Serv., Inc.*,
    2020 WL 1326645, at *4 (D.N.M. Feb. 10, 2020)), *report and
    recommendation adopted*, 2020 WL 1324073 (D.N.M. Mar. 20, 2020)................................12

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants[1] respectfully move this Court for judgment on the pleadings on Plaintiffs'[2] First Amended Complaint ("FAC").[3]  For the reasons set forth below, the FAC should be dismissed in its entirety with prejudice.[4]

## PRELIMINARY STATEMENT

Two courts have now ruled that Plaintiffs should not be able to bring the claims in this lawsuit.  In 2015, as part of a $1.8 billion settlement to resolve a class action in the Southern District of New York (the "SDNY Action"),[5] Plaintiffs, members of the class, agreed to release all claims related to Credit Default Swap ("CDS") transactions that arise from conduct occurring before June 30, 2014 (the "Release"), against Defendants.[6]  Plaintiffs in this Action, nonetheless, seek a second bite at the apple.  As the Southern District of New York and Second Circuit now have confirmed, Plaintiffs (i) were members of the SDNY settlement class, (ii) received appropriate notice of the settlement; (iii) chose not to object or opt out of the class and,

---

[1] "Defendants" are Bank of America, N.A., BofA Securities, Inc., Barclays Bank PLC, Barclays Capital Inc., BNP Paribas S.A., BNP Paribas Securities Corp., Citibank, N.A., Citigroup Global Markets Inc., Credit Suisse AG, Credit Suisse Securities (USA) LLC, Credit Suisse Capital LLC, Deutsche Bank AG, Deutsche Bank Securities Inc., Goldman Sachs & Co. LLC, Goldman Sachs International, JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, Merrill Lynch & Co., Inc., Morgan Stanley & Co. LLC, Morgan Stanley & Co. International plc, Morgan Stanley Capital Services LLC, and NatWest Markets Securities Inc. (f/k/a RBS Securities Inc.).

[2] "Plaintiffs" are New Mexico State Investment Council ("SIC"), Public Employees Retirement Association of New Mexico ("PERA"), and the New Mexico Educational Retirement Board ("ERB").

[3] Defendants have conferred with Plaintiffs pursuant to D.N.M. L.R.-Civ. 7.1(a), and confirmed that Plaintiffs oppose this motion.

[4] As previewed in the parties' recent Joint Status Report to the Court, Defendants are filing this motion for judgment on the pleadings, notwithstanding that proceedings in this case are currently stayed.  Dkt. 253 at 7.  Defendants respectfully request that the stay remain in place for all purposes other than the current motion, including but not limited to discovery, for the reasons set forth in the Joint Status Report.  *Id.* at 15–17.

[5] *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-02476 (S.D.N.Y.).

[6] Two additional banks were defendants in the SDNY Action that are not named as Defendants here.  *See* Dkt. No. 151; SDNY Action, Dkt. No. 1.

significantly, (iv) are enjoined from pursuing this litigation to the extent it raises claims that Plaintiffs released related to conduct occurring pre-June 30, 2014.

In no uncertain terms, the Southern District of New York (Hon. Denise L. Cote) "permanently barred and enjoined" Plaintiffs from asserting "any and all manner of claims, causes of action, crossclaims, counterclaims, suits, demands, actions, rights, charges, liabilities, losses, obligations, and controversies of any kind, nature, or description whatsoever" arising from CDS-related conduct occurring before June 30, 2014.  Dkt. No. 231-1 at 2–3; Dkt. No. 231-2 at 4, 16 (the "SDNY Order").  Having reviewed the FAC, Judge Cote was equally clear that the claims Plaintiffs brought in the District of New Mexico share an "identical factual predicate" with the claims that Plaintiffs released in the settlement of the SDNY Action arising out of the same alleged conspiracy.  SDNY Order at 12.

The Second Circuit agreed, dismissing Plaintiffs' appeal of Judge Cote's injunction and concluding that "[b]y choosing to remain members of the settling class [in the SDNY Action], [the New Mexico Plaintiffs] gave up their right to assert a broad category of claims, ***including the auction-rigging claims they now seek to pursue***" before this Court in this New Mexico action (the "Action").  Dkt. No. 247, Ex. A at 8 (the "Second Circuit Order") (emphasis added). In so doing, the Second Circuit "discern[ed] no error in the district court's finding" that "the [SDNY] settled claims and the [New Mexico Plaintiffs'] auction-rigging claims . . . share a common factual predicate."  *Id.*

Despite the clarity of the SDNY and Second Circuit Orders, Plaintiffs claim that they generally are free to proceed with the FAC.[7]  *See* Dkt. No. 253 at 1–6.  Plaintiffs are wrong; several independent reasons warrant the FAC's dismissal:

***First***, the FAC violates the clear terms of the SDNY Order, which states that Plaintiffs are "permanently barred and enjoined" from pursuing claims "arising from or relating in ***any way*** to [pre-2014] conduct" pertaining "in ***any way*** to any CDS Transactions or Potential Transactions."  SDNY Action, Dkt. No. 667 at 2–3 (emphases added).  The FAC, however, pleads a single overarching conspiracy in which all claims are inextricably tied to alleged agreements that were reached between ***2005 and 2009*** to structure the CDS auction process to limit Plaintiffs' participation and maintain Defendants' control, and, as Plaintiffs allege, that same auction process on which their case is premised continues to be employed in settling CDS trades through auctions.  There is thus no room for doubt that the claims in the FAC fit within the broad scope of the SDNY Order.  This should end the Court's analysis.

***Second***, the Court should dismiss because, after stripping out all of the claims that are enjoined by the SDNY Order, nothing actionable is left in the FAC.  The smattering of post-June 30, 2014 allegations do not come close to pleading a plausible unlawful conspiracy on their own.

***Third***, to the extent that any of Plaintiffs' claims remain (they do not), by January 2016, Plaintiffs were sufficiently notified of the Release in the SDNY Action and the factual bases for those claims, which Judge Cote and the Second Circuit have determined were identical to those pled in the FAC.  SDNY Order at 7–8, 14; *accord* Second Circuit Order at 8–9 & n.2.  The

---

[7] In the parties' Joint Status Report, Plaintiffs conceded they would stipulate "that they will not seek damages for auctions that took place prior to July 1, 2014 and that the class period begins on July 1, 2014."  Dkt. No. 253 at 2.  This does not, as Plaintiffs claim, "resolve[] th[e] issue," *id.*, for the reasons addressed in this motion.  And, in any event, Plaintiffs have still not amended their FAC.

applicable statute of limitations—which is two years prior to filing for the Commodity Exchange Act ("CEA") claims and four years prior to filing for the antitrust and unjust enrichment claims—therefore bars Plaintiffs from seeking damages from before June 2019 for their CEA claims, and from before June 2017 for their antitrust and unjust enrichment claims.

**Fourth**, the FAC asserts claims by and against parties—Plaintiff ERB and Defendant NatWest (NatWest Markets Securities Inc. (f/k/a RBS Securities Inc.))—that can no longer remain in the case given the SDNY and Second Circuit Orders and pleads a Class Period that spans nearly a decade of pre-2014 conduct.

In the end, Plaintiffs must provide a complaint that clearly presents viable claims and articulates which allegations support those claims. *See, e.g.*, *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371–72 (10th Cir. 1989) (affirming dismissal of complaint that alleged numerous paragraphs of "Introductory Allegations," and noting that the court will not "attempt to match the factual assertions with the elements" of the claims). They have not done so here, despite that Defendants directly raised these issues in the Joint Status Report that was filed in July, and after informing Plaintiffs of their need to amend in light of the SDNY and Second Circuit Orders. Allowing Plaintiffs to proceed with the FAC would contravene the SDNY and Second Circuit Orders and undermine a fundamental purpose of class action settlements:  to grant peace and finality for defendants in exchange for providing a class of well-represented plaintiffs with compensation. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 765 (10th Cir. 2020); *Fisher v. Owens-Corning Fiberglass Corp.*, 868 F.2d 1175, 1177 (10th Cir. 1989).  Accordingly, judgment on the pleadings should be granted and the FAC should be dismissed with prejudice.

# BACKGROUND[8]

## A.    The SDNY Action and Settlement

In 2014, a group of plaintiffs filed the operative complaint in the SDNY Action on behalf of themselves and a putative class of institutional investors, including Plaintiffs.  SDNY Action, Dkt. No. 286; SDNY Order at 9.  Plaintiffs in the SDNY Action alleged that the defendants there—including all Defendants in this Action—conspired to maintain exclusive control over the CDS market by restricting CDS trading and limiting access to price information.[9]  *See* SDNY Order at 9–10; Second Circuit Order at 7–8.

After aggressive litigation and extensive discovery, the parties reached a settlement (the "Settlement").  Judge Cote approved the Settlement, holding that it was "fair," "reasonable," "in the best interests" of "all Settlement Class Members," and the "result of vigorous arm's-length negotiations."  SDNY Action, Dkt. No. 539 at 3–4.  Central to the Settlement was Defendants' payment of over $1.8 billion in exchange for extinguishing claims against Defendants "whether known or unknown" "arising from" or "relating in any way to" conduct occurring before June 30, 2014 in the CDS market.  SDNY Action, Dkt. No. 445-1 § 4(d)–9(e).[10]  This language "was a

---

[8] The following is based on the allegations in the FAC, the materials referenced and relied upon in the FAC, and matters of public record, all of which may be considered in ruling on a motion for judgment on the pleadings. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (finding that courts may take "notice of the full contents of the published articles" referenced in complaint); *Ramirez v. Wal-Mart Stores, Inc.*, 192 F.R.D. 303, 304 (D.N.M. 2000) (holding that a motion for judgment on the pleadings "can be resolved on both the pleadings and any facts of which the Court can take judicial notice"); *Caldwell v. Univ. of N.M. Bd. of Regents*, 679 F. Supp. 3d 1087, 1122 (D.N.M. 2023) (holding that a court may take judicial notice of its "own files and records," "facts which are a matter of public record," and documents referenced by the complaint if they are "central" to the claims at issue).

[9] CDS auctions provide one way for settling CDS trades.  FAC ¶ 138.

[10] Specifically, the Settlement defined "Released Claims" to include: "***any and all manner of claims***, causes of action, crossclaims, counterclaims, suits, demands, actions, rights, charges, liabilities, losses, obligations, and controversies of any kind, nature, or description whatsoever, ***whether known or unknown***, . . . ***occurring prior to June 30, 2014***, that ***are alleged or that***

key element" of the Settlement, and required the Releasing Parties to "forever settle and release" claims that arose from pre-2014 conduct, "whether or not concealed or hidden" and "without regard to the subsequent discovery or existence" of "different or additional facts." *Id.* § 4(f).

Prior to final approval of the Settlement, a class notice was mailed to members of the Settlement class in January 2016 (the "Class Notice"). *See* SDNY Action, Dkt. No. 539 at 6. The Settlement class was comprised of all investors, including Plaintiffs, that purchased CDS from or sold CDS to Defendants between January 1, 2008 and September 25, 2015. *Id.* at 2. "The New Mexico plaintiffs were class members and did not opt out of the settlement or raise any objections to the terms of the settlement or the release." SDNY Order at 9.

**B.    The Present Action**

In this Action, as in the SDNY Action, Plaintiffs allege that Defendants orchestrated a conspiracy to manipulate the CDS market;[11] specifically, by developing an auction protocol for settling CDS contracts and then "hard wiring" that protocol into the standard agreements that market participants use to trade CDS.

The FAC is predicated on allegations of conduct occurring before the June 30, 2014 Release date. Plaintiffs allege that, "from the very beginning," Defendants "'hardwired' their exclusive and secret control of the CDS auction process," FAC ¶ 516, first by creating the CDS auctions in 2005 and then by forming a "dealer-only 'working group'" in 2008 and 2009 that "ma[d]e the most important decisions about how the CDS process would work," including "who

---

*could have been alleged* in [the SDNY Action] *relating in any way to any CDS Transactions* or Potential CDS Transactions." SDNY Action, Dkt. No. 445-1 § 4(d) (emphasis added). The Settlement Agreement further defined "CDS Transactions" broadly to include "any purchase, sale, trade, assignment, novation, unwind, termination, or other exercise of rights or options with respect to any CDS." *See id.* § 2(e).

[11] Because the Court is familiar with Plaintiffs' allegations regarding the CDS market from its prior order on Defendants' Motion to Dismiss, *see* Dkt. No. 173, we will not repeat them here.

would get to participate" in the CDS auction process and "what the settlement rules would look like." *Id.* ¶¶ 145, 344, 516–517.  At these supposedly secret "dealer-only" meetings in 2008 and 2009, Defendants allegedly reached "anticompetitive agreements" that are at the heart of the FAC. *Id.* ¶¶ 348–353.  This Court's 2023 order—largely denying Defendants' motion to dismiss the FAC—relied on Plaintiffs' allegations about these "key agreements," which purportedly "function[] to maintain dealer control of the CDS auction market."  Dkt. No. 173 at 10 (citing FAC ¶ 354); *see also* FAC ¶¶ 344, 347–353.

Beyond those core allegations, the FAC's claims are based largely upon regression analyses, but those analyses were run on some unspecified sample of auctions over nearly a decade of pre-2014 data—88 "CDS auctions from 2005 through 2020"—and do not distinguish between pre- and post-2014 auctions.  FAC ¶ 249.[12]  The FAC does not disclose which auctions Plaintiffs purportedly analyzed or how many of them occurred within the near decade-long period covered by the Release, let alone whether the conclusions Plaintiffs draw from the analyses would hold absent the impact of auctions pre-dating June 30, 2014.  At the time of Defendants' first motion to dismiss—and before the SDNY and Second Circuit concluded that the FAC's claims arise from Released conduct—this Court found these analyses "sufficient," "standing alone," to deny Defendants' motion to dismiss.  *See* Dkt. No. 173 at 66–67.

## C.    The SDNY and Second Circuit Orders on Defendants' Motion to Enforce the SDNY Settlement

*SDNY Order.*    In 2023, Defendants filed a motion to enforce the Settlement in the Southern District of New York, as previewed in Defendants' affirmative defenses to the FAC.  SDNY Action, Dkt. No. 646; Dkt. No. 190 at 94.  Plaintiffs opposed.  SDNY Action, Dkt. No.

---

[12]  The FAC also includes allegations of analyses comparing Defendants' to non-Defendants' conduct, which rely on 137 auctions from 2005 to 2020, also without disaggregating pre- and post-2014 auctions.  *See, e.g.*, FAC ¶¶ 312–318.

661.  In January 2024, applying the Release to the claims in this Action, Judge Cote granted Defendants' motion to enforce and held that Plaintiffs are barred "from pursuing any claims against the [Defendants] in th[is] Action for any alleged violation of law based on conduct occurring before June 30, 2014."  SDNY Action, Dkt. No. 667 at 2.

In granting Defendants' motion, Judge Cote held that "[t]he New Mexico plaintiffs' claims share an ***identical factual predicate*** with the Released Claims," because "[c]ore to both sets of claims are allegations that [Defendants] intentionally organized the CDS market to reduce transparency and restrict non-dealers from participation, thus solidifying their control over the CDS market."  SDNY Order at 12 (emphasis added).

In addition, Judge Cote held that "[t]he New Mexico plaintiffs' claims were . . . adequately represented in the [SDNY] Action."  *Id*. at 13.  Specifically, "[t]he interests of the [SDNY] Action settlement class, ***which included the New Mexico plaintiffs***, were aligned insofar as the interest was recovery from losses from CDS Transactions with [Defendants]."  *Id*. (emphasis added).  Judge Cote added that "[t]he New Mexico plaintiffs were class members and did not opt out of the settlement or raise any objections to the terms of the settlement or the release," and the "settlement class plaintiffs agreed to release all CDS Transaction claims, 'known and unknown', in exchange for compensation of $1,864,650,000."  *Id*. at 9, 14.  Moreover, "in the Release, class members were deemed to have acknowledged 'that the inclusion of 'Unknown Claims' in the definition of Released Claims was separately bargained for and was a key element of the Agreement.'"  *Id*. at 14.  Judge Cote also concluded that, based on the written Class Notice, Plaintiffs had adequate notice that they were releasing CDS-auction claims, and they had been adequately represented by counsel in that case.  *Id.*

***Second Circuit Order.*** Plaintiffs appealed the SDNY Order. In May 2025, the Second Circuit dismissed Plaintiffs' appeal, holding that it did not have jurisdiction to review the SDNY Order because it "merely enforced the parties' settlement agreement and its accompanying injunctions 'by directing compliance therewith.'" Second Circuit Order at 3, 5–6.

Importantly, though, the Second Circuit "discern[ed] no error in the district court's finding" that Plaintiffs' claims in this Action and those settled in the SDNY Action "share a common factual predicate," and rejected Plaintiffs' arguments to the contrary as "unpersuasive" and "unavailing." *Id.* at 8–9. As the Second Circuit explained, "both complaints allege facts concerning the same time periods, means of collusion, and relevant players." *Id.* at 8. In particular, "the complaints in both actions allege that the [Defendants] conspired during secret meetings beginning in the fall of 2008 to exclude and constrain participation in, and grant themselves control over, the CDS market." *Id.* at 7–8. The Second Circuit therefore concluded that, "[b]y choosing to remain members of the settling class in the [SDNY] Action, the [New Mexico Plaintiffs] gave up their right to assert a broad category of claims, including the auction-rigging claims they now seek to pursue" in this Action. *Id.* at 8. In addition, the Second Circuit agreed with Judge Cote that the Settlement class, including Plaintiffs, had been adequately represented in the SDNY Action and had received sufficient notice of the terms of the Settlement and the scope of the Release. *Id.* at 8–9 & n.2.

## ARGUMENT

"A Fed. R. Civ. P. 12(c) motion for judgment on the pleadings uses the same standard of review that applies to a Fed. R. Civ. P. 12(b)(6) motion to dismiss," meaning "a plaintiff must allege facts sufficient to state a plausible claim of relief" for its complaint to survive. *Abeyta v. Warfield*, 2015 WL 13665475, at *2 (D.N.M. Feb. 18, 2015) (Gonzales, J.).

Judgment on the pleadings is warranted here for several reasons.

**First**, the FAC should be dismissed in its entirety because the SDNY Order precludes Plaintiffs' claims, which depend entirely on pre-2014 conduct.

**Second**, the FAC should separately be dismissed because it does not sufficiently plead conduct occurring after June 30, 2014 to support a plausible conspiracy claim.

**Third**, years of Plaintiffs' claims are now plainly time-barred because, at least as of January 2016, Plaintiffs received notice of the SDNY Action, which shares an identical factual predicate with this case.

**Fourth**, the FAC asserts claims by and against parties that can no longer remain in the case given the SDNY and Second Circuit Orders, as well as a Class Period that spans nearly a decade of pre-2014 conduct.

## I.    The FAC Should Be Dismissed Because It Is Inextricably Predicated on Released Conduct.

The Southern District of New York enjoined Plaintiffs "from pursuing any claims against the [Defendants] in th[is] Action for any alleged violation of law based on conduct occurring before June 30, 2014."  SDNY Action, Dkt. No. 667 at 2.  As Judge Cote found, Plaintiffs' auction rigging claims in this case "share an identical factual predicate with the Released Claims," because "[c]ore to both sets of claims are allegations that [Defendants] intentionally organized the CDS market to reduce transparency and restrict non-dealers from participation, thus solidifying their control over the CDS market."  SDNY Order at 12.  The Second Circuit "discern[ed] no error" with Judge Cote's conclusions.  Second Circuit Order at 8.

Plaintiffs wrongly insist that these two orders change next to nothing.  According to them, all pre-2014 allegations in the FAC can and should be treated as mere "background" information, and the FAC can proceed before this Court as written so long as Plaintiffs put forth a "stipulat[ion] that they will not seek damages for auctions that took place prior to July 1,

2014." *See* Dkt. No. 253 at 2, 4–6.  But what Plaintiffs now call "background" information is the Released conduct *at the heart of the conspiracy alleged in the FAC*.  FAC ¶¶ 5, 145–150, 337, 347, 354, 364–365, 516–517.[13]

Moreover, Plaintiffs' limited post-2014 allegations are inextricably intertwined with allegations regarding pre-2014 Released conduct.  For example, Plaintiffs concede that their statistical allegations "incorporate[] a cross-section incorporating all CDS auctions *from 2005 through 2020*."  *Id.* ¶ 332 (emphasis added).  But, following the SDNY and Second Circuit Orders, Plaintiffs make no attempt to disentangle pre-June 30, 2014 data from post-June 30, 2014 data in those analyses.  Plaintiffs never explain how much of their supposed "cross-section" captures pre-2014 conduct as opposed to post-2014 conduct, yet there is no doubt that they have released Defendants from all liability for conduct occurring in nine of the fifteen years covered by the analyses.  Plaintiffs have pleaded no basis to conclude that their analyses would show the same results if they were to exclude pre-June 30, 2014 data.

The allegations about specific auctions discussed in the FAC—whether held pre- or post-June 30, 2014—are also impermissibly based on pre-2014 conduct because they are alleged to have caused Plaintiffs harm "as a direct result of Defendants' conspiracy," *i.e.*, the single conspiracy pled in the FAC predicated on Released conduct.  *See* FAC ¶¶ 424, 425–508; *see also id.* ¶ 509 (describing the auctions mentioned in the FAC as "illustrative examples" and alleging that "[e]very dollar Defendants made by virtue of their [pre-2014] conspiracy is a dollar they

---

[13] Specifically, Defendants allegedly "introduced" CDS "auction settlement[s]" *in 2005, see* FAC ¶¶ 138, 140–141, 337; enforced the adoption of the settlement auction process, ensuring the process became "prevalent" *by 2006*, *id.* ¶ 144; reached the "key agreements" that "function[] to maintain dealer control of the CDS auction market" *in 2008 and 2009*, Dkt. No. 173 at 10 (citing FAC ¶ 354); *see also* FAC ¶¶ 342, 348, 353; and "agreed to 'hard-wire' the auction process they *designed in 2005* into the standardized CDS contracts that virtually every CDS market participant uses" (present tense) "to trade CDS" *by 2009*, *id.* ¶ 145 (emphasis added).

11

took from the Class members").[14]    Accordingly, since Plaintiffs have been enjoined from pursuing any and all claims arising out of pre-2014 conduct, and Plaintiffs' alleged conspiracy is entirely predicated on such conduct, their claims must be dismissed.[15]

Plaintiffs' proposal to rehabilitate their claims by stipulation does not "resolve[] this issue." Dkt. No. 253 at 2, 4–6. This Court rejected a similar argument in *Strickland v. Madden Sales & Service, Inc*. There, the plaintiffs tried to avoid removal to federal court based on diversity jurisdiction by proposing a stipulation to narrow the scope of the declaratory judgment and damages they were seeking, including by treating allegations concerning certain stock ownership rights as "background," so that the amount in controversy was less than $75,000. 2020 WL 1326645, at *4 (D.N.M. Feb. 10, 2020), *report and recommendation adopted*, 2020 WL 1324073 (D.N.M. Mar. 20, 2020). This Court refused to accept the stipulation because plaintiffs sought declaratory judgment in part related to the very stock rights they also claimed as background. *See id*. In other words, the "background" allegations were central to Plaintiffs' claims, and thus their stipulation was "inconsistent with the very allegations in their complaint." *Id*. The same is true here. Plaintiffs' claims make clear that their allegations of pre-2014

---

[14] This entanglement of pre- and post-2014 allegations in the FAC is not limited to Plaintiffs' statistical analyses or the "illustrative" auctions discussed in the FAC. *See, e.g.,* FAC ¶¶ 1, 6–7, 24–25, 27–32, 123–133, 160, 175–177, 332, 355–367, 369, 375–417, 514–520.

[15] The same alleged pre-2014 conspiracy is also the foundation of Plaintiffs' CEA and unjust enrichment claims. *See, e.g.,* FAC ¶¶ 561–562 ("During the Class Period, Defendants and Jane Doe Defendants specifically intended to and did cause unlawful and artificial CDS final auction prices ***in violation of the CEA, 7 U.S.C. § 1, et seq., through their use of collusive and manipulative misconduct*** . . . As alleged herein, Defendants and Jane Doe Defendants ***are able to manipulate the CDS final auction prices by colluding in their submission of two-way prices and limit orders***, both of which are used to calculate the final CDS auction price.") (emphasis added); *id.* ¶ 576 ("***Defendants were unjustly enriched*** at the expense of and to the detriment of Plaintiffs and members of the Class. As described above, Defendants knowingly acted in an unfair, unconscionable, and oppressive manner towards Plaintiffs and members of the Class ***through their conspiracy to cartelize the CDS settlement process, and to bid-rig and price-fix the CDS final auction price***.") (emphasis added).

conduct are not mere "background," but the formation of the alleged conspiracy, and thus the very foundation of their claims.

"[I]n the universe of this [New Mexico] case," the Southern District of New York has reviewed the factual predicate of the FAC, determined that it is identical to the SDNY Action, and enjoined Plaintiffs from pursuing "any and all manner of claims" arising from CDS-related conduct occurring before June 30, 2014. Dkt. No. 236 at 3; SDNY Action, Dkt. No. 667 at 2–3. To be certain, that injunction does not render Defendants forever immune from any suit related to their participation in the CDS market. But it does clearly provide that **this case** must be dismissed because Plaintiffs' claims rely on, arise from, and are predicated on conduct pre-dating June 30, 2014—an infirmity no unilateral stipulation can cure.

## II.    The FAC Should Be Dismissed Because Any Allegations Remaining After the SDNY Order Is Applied Are Insufficient to Support an Alleged Unlawful Conspiracy.

The Court need not evaluate the FAC's remaining post-2014 allegations, separately, after applying the SDNY Order to the FAC. But in any event, those allegations do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The remaining post-June 30, 2014 allegations provide neither direct nor circumstantial evidence of an alleged post-Release conspiracy. *See Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1177, 1179 (10th Cir. 2019).

***Direct Evidence***:   Plaintiffs do not plead any facts post-dating June 30, 2014 that constitute direct evidence of an alleged conspiracy. Direct evidence "is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Id.* at 1177. To qualify as direct evidence, an allegation must amount to a "smoking gun," like a "document or conversation explicitly manifesting the existence of the agreement." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 324 n.23 (3d Cir. 2010); *see also Mayor & City Council of Balt. v. Citigroup, Inc.*, 709

13

F.3d 129, 136 (2d Cir. 2013) (direct evidence is a "smoking gun" such as "a recorded phone call in which two competitors agreed to fix prices at a certain level").

This Court previously held that the "key agreements" pre-dating June 30, 2014 constituted direct evidence of Defendants' alleged conspiracy.  Dkt. No. 173 at 10, 67 ("[A]s detailed in Section II.D, Plaintiffs allege specific agreements entered into by the Defendants." (citing FAC ¶¶ 349–354 (containing the allegations of the key agreements))).  However, as already discussed, Plaintiffs have released Defendants from—and are enjoined from pursuing— any and all claims based on those alleged agreements.  Those agreements therefore cannot supply direct evidence of an alleged conspiracy *after* June 30, 2014, and Plaintiffs do not plead anything even remotely resembling direct evidence of a conspiracy that post-dates the Release.  Thus, there is no direct evidence of any alleged conspiracy.

***Circumstantial Evidence***:  Plaintiffs also do not plead circumstantial evidence of a conspiracy after June 30, 2014.  To do so, Plaintiffs were required to plead facts sufficient to show that the defendants engaged in "parallel conduct" and to have alleged "plus factors" that "raise[] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  *Twombly*, 550 U.S. at 553, 557; *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015).  Plaintiffs have not met these burdens.

In its 2023 motion to dismiss decision, this Court relied on Plaintiffs' econometric and statistical analyses as demonstrating parallel conduct.  *See* Dkt. No. 173 at 64–67.  But, as explained, those analyses "incorporate[] a cross-section incorporating all CDS auctions ***from***

*2005 through 2020*." FAC ¶ 332 (emphasis added).[16]  Critically, Plaintiffs never explain how much of their supposed "cross-section" captures pre-2014 conduct—for which all liability has been released—as opposed to post-2014 conduct.  What is clear, however, is that almost two-thirds of the time period of their analyses pre-dates June 2014, and Plaintiffs are thus enjoined from relying upon these analyses in their current form.  There are no allegations that these analyses would remain the same if they were to include only post-June 30, 2014 data and as such, Plaintiffs have failed to adequately plead parallel conduct in the period after the Release date.  *See, e.g.*, *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 395 (2d Cir. 2024) (rejecting allegations of statistics that failed to isolate the alleged conspiracy period and instead "mostly consist[ed] of averages covering roughly ten years—from eight years before to two years after the purported unraveling of the conspiracy in June of 2015").[17]

In the absence of parallel conduct, whether there are allegations of "plus factors" is irrelevant.  *See, e.g.*, *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 391 (9th Cir. 2017) ("Plus factors are relevant only if the complaint adequately alleges parallel conduct among the defendants."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2025 WL

---

[16] *See also* Dkt. No. 173 at 65 (citing FAC ¶¶ 249–250, 264, 269, 295, 318, 332 (allegations related to analyses of 88 CDS auctions, from 2005 to 2020); 270–274, 297–300 (allegations related to analyses of subsets of these 88 auctions in which Goldman Sachs was and was not the "dominant Defendant"); 275–276, 301–303 (Deutsche Bank); 277–278, 303–304 (Barclays); 279–280, 305–306 (Credit Suisse); 281–282, 307–308 (JPMorgan); 283–284 (BofA); 285–286, 309–311 (Citi); 287–288 (Morgan Stanley); 289–290 (RBS); 291–292 (BNP); 299–300 (subset of 88 auctions in which Goldman Sachs is alleged to be the "dominant Defendant"); 312–318 (contrasts between Defendants and non-Defendants in a subset of 137 auctions, from 2005 to 2020)); *id.* (citing FAC ¶¶ 236–246 (88 auctions, from 2005 to 2020), 319–335 (137 auctions, from 2005 to 2020)); *id.* at 66 (citing FAC ¶¶ 253–254, 257 (88 auctions)).

[17] For the same reasons, to the extent the Court relied solely upon Plaintiffs' statistical analyses to find that both parallel conduct and plus factors were sufficiently pled, *see* Dkt. No. 173 at 66–67, that decision can no longer stand.  As discussed above, these analyses are inextricably intertwined with pre-2014 conduct, and there is no basis upon which the Court can conclude that post-2014 analyses alone support a plausible conspiracy.

2733020, at *38 (S.D.N.Y. Sept. 25, 2025) ("Because we have found plaintiffs' evidence of parallel conduct lacking, we need not engage in an analysis of potential 'plus factors.'"); *accord Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018). For instance, absent parallel behavior, any assertion by Plaintiffs that Defendants have a common motive to conspire cannot support an inference of conspiracy. *See In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 964 (N.D. Cal. 2007) ("If 'a motive to achieve higher prices' were sufficient, every company in every industry could be accused of conspiracy because they all 'would have such a motive.'" (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 133 (3d Cir. 1999))), *aff'd*, 741 F.3d 1022 (9th Cir. 2014). Therefore, this Court need not analyze any of Plaintiffs' plus factor allegations.

In sum, once the FAC is stripped of pre-2014 Released conduct on which Plaintiffs cannot rely, the FAC does not plausibly allege a conspiracy. Thus, the FAC should be dismissed.

## III.  Plaintiffs' Untimely Claims Should Be Dismissed.

The SDNY and Second Circuit Orders also confirm that Plaintiffs were on notice of the factual predicate for their claims in this Action by no later than January 2016, when Plaintiffs received written notice of the Settlement. SDNY Order at 7, 14. Yet, Plaintiffs did not file their current claims until June 2021—five years and five months later. Even if the FAC in its entirety is not dismissed (it should be), Plaintiffs' claims related to conduct outside of the applicable two- and four-year limitations periods are time-barred.

This Court has already held that Plaintiffs' CEA claims are subject to a two-year statute of limitations and that their antitrust and unjust enrichment claims are subject to a four-year statute of limitations. Dkt. No. 173 at 42–44, 51. Statutes of limitations start running when the plaintiff discovered or could have discovered the facts giving rise to a claim. *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1247 (D.N.M. 2010), *aff'd*, 635 F.3d 1250 (10th Cir. 2011). Plaintiffs

clearly discovered or could have discovered the factual basis for their claims—and thus could have filed suit—by no later than January 2016, when Plaintiffs had notice of the Settlement, which involved a factual basis "identical" to the current case.  SDNY Order at 14.

CEA claims that Plaintiffs discovered or could have discovered prior to June 2019 (two years before the complaint was filed in June 2021, *see* Dkt. No. 1) and antitrust and unjust enrichment claims they discovered or could have discovered prior to June 2017 (four years before Plaintiffs filed their complaint) fall outside of the limitations periods and are untimely. This means that for their CEA claims—assuming Plaintiffs have alleged any actionable conduct that occurred after Plaintiffs had actual notice in January 2016—Plaintiffs can only pursue damages after June 2019 and for their antitrust and unjust enrichment claims, Plaintiffs at most can pursue damages after June 2017.  Claims for damages related to prior conduct are time-barred and should be dismissed.

Although this Court previously credited Plaintiffs' argument at the motion-to-dismiss stage that the limitations periods were tolled due to fraudulent concealment, *see* Dkt. No. 173 at 50–53, that was before the SDNY and Second Circuit Orders.  In light of these orders, Defendants could not plausibly have "concealed" Plaintiffs' claims when Plaintiffs had actual notice of claims sharing an "identical factual basis" in the SDNY Action.[18]  SDNY Order at 12, 14; *see Korwek v. Hunt*, 646 F. Supp. 953, 958 (S.D.N.Y. 1986) (plaintiffs failed to establish fraudulent concealment where earlier lawsuits "alleging the same conspiracy against many of the same defendants" "put plaintiffs on notice of their potential claims"), *aff'd,* 827 F.2d 874 (2d Cir. 1987)); *see also In re Briscoe*, 448 F.3d 201, 222 (3d Cir. 2006) (affirming district court's

---

[18]  *See* Dkt. No. 173 at 51 (fraudulent concealment requires that Plaintiffs show "successful concealment from the injured party" and "that the[y] . . . did not know or by the exercise of due diligence could not have known that [they] might have a cause of action." (quoting *Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 336–37 (10th Cir. 1994))).

holding that plaintiffs' claims were time-barred after class settlement in prior class action and publicity campaign concerning settlement put plaintiffs on notice of claims); *In re Nat'l Life Ins. Co.*, 247 F. Supp. 2d 486, 492–93, 495 (D. Vt. 2002) (enjoining plaintiffs from pursuing claims, holding that broad class settlement notice for a prior class action "put [plaintiff] on notice that she might have a [similar] claim" that would be covered by the settlement's release). Accordingly, fraudulent concealment is no longer available to Plaintiffs.

## IV. The FAC Cannot Stand in Its Current Form Because There Are No Post-2014 Allegations Attributed to Plaintiff ERB and Defendant NatWest, and the FAC Is Predicated on an Impermissible Class Period.

The SDNY and Second Circuit Orders compel immediate dismissal of Plaintiff ERB and Defendant NatWest.  Plaintiff ERB alleges harm *only* from auctions before June 30, 2014, *see* FAC ¶¶ 482–510, and Defendant NatWest is not alleged to have been involved in any CDS auctions after June 30, 2014, at the latest, *see id.* ¶ 94 (alleging NatWest's involvement in the relevant committees "through at least April 2012").  For these exact reasons, Magistrate Judge Martinez has already found that "the SDNY decision orders the dismissal" of Plaintiff ERB and Defendant NatWest, and that pending the Second Circuit's review, these two parties may well have "no obligation to remain in the case."  Dkt. No. 236 at 5.  As the Second Circuit did not disturb the SDNY Order, neither of these parties can remain in the case.

Similarly, the FAC also impermissibly includes nine years of conduct that the SDNY and the Second Circuit found was released in defining the putative Class as "all persons or entities who, *during the period of June 1, 2005 through the present*, settled a credit default swap . . . by reference to the ISDA credit default swap auction protocol . . . [.]"  FAC ¶ 544 (emphasis added). Because the FAC is predicated on an impermissible Class Period and includes entities no longer party to the case, Plaintiffs' defective pleading should be dismissed.

*       *       *

In sum, allowing Plaintiffs to proceed with the FAC would flout the SDNY Order enforcing the judgment and Release to which Plaintiffs are bound and eradicate the principle that class action settlements are intended to provide "peace" from "repeated litigation over the same subject matter" and finality for defendants. *See Elna Sefcovic*, 807 F. App'x at 765 (observing that "[i]nherent in the nature of a class-action settlement is the release of the claims of every class member," and that such releases protect defendants from "repeated litigation over the same subject matter" (quoting *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1173, 1176 (10th Cir. 2016))); *Fisher*, 868 F.2d at 1177 ("One seeking a settlement and release has a right to buy peace from all future contention on existing claims of every character." (citing *Fager*, 854 F.3d at 1173)). If Plaintiffs wanted to proceed with this litigation, they were obligated to plead a claim based on conduct they have not released. They have refused to do so. Because the FAC contains no viable claim without the Released conduct Plaintiffs have been enjoined from pursuing, it should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this motion for judgment on the pleadings as to all causes of action asserted in the FAC.

Dated: October 10, 2025

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Charles K. Purcell*

Charles K. Purcell
Melanie B. Stambaugh
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
kpurcell@rodey.com,
mstambaugh@rodey.com

Robert Sperling
Staci Yablon
William B. Michael
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
RSperling@paulweiss.com
SYablon@paulweiss.com
wmichael@paulweiss.com

*Attorneys for Defendants Goldman Sachs & Co. LLC and Goldman Sachs International*

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Eric R. Burris*

Eric R. Burris
Debashree Nandy
201 Third St. NW, Suite 1800
Albuquerque, New Mexico 87102
Telephone:  (505) 244-0770
Facsimile:  (505) 244-9266
eburris@bhfs.com
rnandy@bhfs.com

Jay B. Kasner
Karen Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Facsimile:  (917) 777-3000
Jay.Kasner@skadden.com
Karen.Lent@skadden.com

*Attorneys for Defendants Citibank, N.A. and Citigroup Global Markets Inc.*

SNELL & WILMER LLP

By: */s/ Gregory J. Marshall*

Gregory J. Marshall
201 Third Street N.W. #500
Albuquerque, New Mexico 87102
Telephone:  602-382-6514
Facsimile:  602-382-6070
E-mail:  gmarshall@swlaw.com

Sheila R. Adams James
Christopher Lynch
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Fax:  (212) 450-4800
sheila.adams@davispolk.com
christopher.lynch@davispolk.com

*Attorneys for Defendants Bank of America, N.A.
and BofA Securities, Inc.*

22

ATKINSON, BAKER & RODRIGUEZ, P.C.

By: */s/ Douglas A. Baker*

Douglas A. Baker
Justin D. Rodriguez
201 Third Street NW, Suite 1850
Albuquerque, NM 87102
Telephone:  (505) 764-8111
dbaker@abrfirm.com
jrodriguez@abrfirm.com

Jeffrey T. Scott
Matthew J. Porpora
Jonathan S. Carter
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
scottj@sullcrom.com
porporam@sullcrom.com
carterjo@sullcrom.com

Renata B. Hesse
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW Suite 700
Washington, DC 20006-5215
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330
hesser@sullcrom.com

*Attorneys for Defendant Barclays Bank PLC and
Barclays Capital Inc.*

23

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Charles K. Purcell*

Charles K. Purcell
Melanie B. Stambaugh
P.O. Box 1888
Albuquerque, NM 87103
Telephone: (505) 765-5900
Facsimile: (505) 768-7395
kpurcell@rodey.com
mstambaugh@rodey.com

Joshua A. Goldberg
Amy N. Vegari
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2000
jgoldberg@pbwt.com
avegari@pbwt.com

*Attorneys for Defendant BNP Paribas S.A. and BNP Paribas Securities Corp.*

BARDACKE ALLISON MILLER LLP

By: */s/ Benjamin Allison*

Benjamin Allison
141 East Palace Avenue
Santa Fe, NM 87501
Telephone:  (505) 995-8000
Facsimile:  (505) 672-7037
ben@bardackeallison.com

David G. Januszewski
Herbert S. Washer
Jason M. Hall
Margaret A. Barone
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420
djanuszewski@cahill.com
hwasher@cahill.com
jhall@cahill.com
mbarone@cahill.com

*Attorneys for Defendants Credit Suisse AG, Credit Suisse Securities (USA) LLC, and Credit Suisse Capital LLC*

ALLEN LAW FIRM, LLC

By: */s/ Meena H. Allen*

Meena H. Allen
6121 Indian School Road NE, Suite 230
Albuquerque, NM 87110
Telephone:  (505) 298-9400
Facsimile:  (505) 298-7070
mallen@mallen-law.com

John Terzaken
Adrienne V. Baxley
Laurel Fresquez
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, DC 20001
Telephone:  (202) 636-5500
Facsimile:  (202) 636-5502
john.terzaken@stblaw.com
adrienne.baxley@stblaw.com
laurel.fresquez@stblaw.com

*Attorneys for Defendants Deutsche Bank AG and
Deutsche Bank Securities Inc.*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Charles K. Purcell*

Charles K. Purcell
Melanie B. Stambaugh
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
kpurcell@rodey.com
mstambaugh@rodey.com

Robert D. Wick
John S. Playforth
Shadman Zaman
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291
rwick@cov.com
jplayforth@cov.com
szaman@cov.com

Kyle W. Chow
30 Hudson Yards
New York, NY 10001-2170
Telephone: (212) 841-1000
kchow@cov.com

*Attorneys for Defendants JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC*

HOLLAND & HART LLP

By: */s/ John C. Anderson*

John C. Anderson
110 N. Guadalupe St., Suite 1
Santa Fe, NM 87507
Telephone:  (505) 954-7290
JCAnderson@hollandhart.com

Michael A. Paskin
Lauren M. Rosenberg
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
mpaskin@cravath.com
lrosenberg@cravath.com

*Attorneys for Defendants Morgan Stanley & Co.*
*LLC, Morgan Stanley & Co. International plc, and*
*Morgan Stanley Capital Services LLC*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: */s/ Charles K. Purcell*

Charles K. Purcell
Melanie B. Stambaugh
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
kpurcell@rodey.com
mstambaugh@rodey.com

James R. Warnot, Jr.
Patrick C. Ashby
Nicole E. Jerry
LINKLATERS LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 903-9000
james.warnot@linklaters.com
patrick.ashby@linklaters.com
nicole.jerry@linklaters.com

Adam S. Lurie
LINKLATERS LLP
601 13th St. NW
Suite 400
Washington, DC 20005
Telephone:  (202) 654-9227
adam.lurie@linklaters.com

*Attorneys for Defendant NatWest Markets
Securities Inc. (f/k/a RBS Securities Inc.)*

29

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 10, 2025, the foregoing DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.


By: */s/ Charles K. Purcell*
     Charles K. Purcell