**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

IN RE CREDIT DEFAULT SWAPS
AUCTIONS LITIGATION

No. 1:21-cv-00606-KG-DLM

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings, Doc. 256, Plaintiffs' New Mexico State Investment Council, Public Employees Retirement Association of New Mexico, and the New Mexico Educational Retirement Board's Response, Doc. 258, and Defendants' Reply, Doc. 259.[1] For the reasons stated below, the Court grants in part and denies in part the motion. The Court dismisses with prejudice Plaintiffs' claims to the extent they allege continued conspiracy based on released conduct occurring before June 30, 2014. The Court *sua sponte* grants Plaintiffs leave to file a second amended complaint for their claims predicated on conduct occurring after July 1, 2014.

## *I. Background*

This putative antitrust class action arises from the purchase and sale of credit default swaps ("CDS"). The allegations in this litigation are set forth in detail in the Court's June 5,

[1]The Defendants come in ten (10) tranches, which the Court collectively refers to as "Defendants": (1) Bank of America/Merrill Lynch ("BoA"), including Bank of America, N.A., and BofA Securities, Inc.; (2) Barclays, including Barclays Bank plc and Barclays Capital Inc.; (3) BNP Paribas, including BNP Paribas S.A. and BNP Paribas Securities Corp.; (4) Citi, including Citibank N.A., and Citigroup Global Markets, Inc.; (5) Credit Suisse, including Credit Suisse AG, Credit Suisse Securities (USA) LLC, Credit Suisse Capital LLC; (6) Deutsche Bank, including Deutsche Bank AG and Deutsche Bank Securities Inc.; (7) Goldman Sachs, including Goldman Sachs & Co. LLC and Goldman Sachs International; (8) JPMorgan, including J.P. Morgan Chase Bank, N.A. and J.P. Morgan Securities LLC; (9) Morgan Stanley, including Morgan Stanley & Co., LLC, Morgan Stanley & Co. International plc, and Morgan Stanley Capital Services, LLC; and (10) RBS, including NatWest Markets Securities, Inc. *See* Doc. 151 ¶¶ 53–94.

2023, Memorandum Opinion and Order granting in part Defendants' motion to dismiss. *See* Doc. 173. In short, CDS are used by participants in financial markets to hedge risks associated with debt-based securities. *Id.* at 4–6. They "are essentially insurance policies on the face value (notional value) of corporate debt (bonds or loans)[.]" *Credit-default swap*, Black's Law Dictionary (12th ed. 2024). Much like an insurance contract, the buyer of a CDS makes premium-like payments to the seller in exchange for protection against loss from "credit events," such as default or bankruptcy. Doc. 173 at 5. Unlike insurance, however, the buyer of a CDS can purchase a CDS on bonds that it does not actually own. *Id.* And unlike the stock market, CDS transaction information is not publicly available and is only reported to regulators. *Id.* at 7–8. CDS contracts are settled through an auction process where a committee of market participants decides whether a credit event has occurred, holds an auction, and determines the final auction price "that values all deliverable obligations (bonds) for purpose of CDS settlement." *Id.* at 7–8, 12.

In October 2013 a class action lawsuit was filed in the Southern District of New York ("SDNY") alleging that certain banks, including all Defendants in the present action, "conspired to suppress price transparency and competition in the trading market for CDS and boycott trading of CDS, thereby maintaining supracompetitive bid/ask spreads." *In re Credit Default Swaps Antitrust Litig*. ("*In re CDS*"), No. 13-md-2476-DLC, 2016 WL 2731524, at *2 (S.D.N.Y. Apr. 26, 2016). The parties settled the matter for approximately $1.87 billion. *Id.* at *3. In exchange for payment, the class members, including Plaintiffs, agreed to release "any and all manner of claims" against defendants "relating in any way to the litigation or settlement of this Action . . . occurring prior to June 30, 2024, that are alleged or could have been alleged in this Action relating to any CDS Transactions or Potential CDS Transactions[.]" *Id.* (the "Release");

*see also id.*, Doc. 445-1 at 15. Also incorporated in the definition of "Released Claims" are any claims arising from or relating in any way to:

> (i) any conduct by any of the Released Parties that has been or could be alleged to be or have been anticompetitive relating to, arising out of, or affecting or potentially affecting any CDS Transaction or Potential CDS Transaction; (ii) any joint conduct by any of the Released Parties that has been or could be alleged to have unfairly increased the price or widened or otherwise manipulated the spread of any CDS Transaction or Potential CDS Transaction . . . (iii) any joint conduct relating to potential or actual clearinghouses, exchanges, trading platforms and/or other entities directly or indirectly involved or potentially involved with any CDS Transaction or Potential CDS Transaction . . . and including but not limited to any conduct that has been or could be alleged to have delayed or prevented or manipulated exchange trading or any other method or form of clearing, executing or trading of CDS Transactions through any means . . . (iv) any joint conduct relating to potential or actual involvement, participation, or ownership in any organization, entity, working group or other group related in any way to CDS or CDS Transactions . . . .

*In re CDS*, No. 13-md-2476-DLC, 2024 WL 303802, at *2 (S.D.N.Y. Jan. 26, 2024) (emphasis in original). Subsection (f) also states, in relevant part:

> The Releasing Parties may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims. Nevertheless, Class Plaintiffs and the Releasing Parties shall expressly, fully, finally, and forever settle and release, and each Class Member . . . shall be deemed to have . . . forever settled and released, any and all Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Class Plaintiffs and the Releasing Parties acknowledge, and Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Agreement.

No. 13-md-2476-DLC, Doc. 445-1 at 18. Plaintiffs "did not opt out of the settlement or raise any objections to the terms of the settlement or the release." *In re CDS*, 2024 WL 303802, at *2.

In June 2021 Plaintiffs filed the instant action alleging Defendants "have been consistently engaged in a multiyear bid-rigging and price-fixing scheme to artificially skew the

[CDS] final auction price . . . by coordinating their auction submissions and sharing nonpublic information with each other in and around the auctions." Doc. 258 at 9–10; *see also* Doc. 151 ¶¶ 184–91. The First Amended Complaint contains causes of action for: (1) conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 15; (2) violations of three separate provisions of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*; and (3) unjust enrichment. Doc. 151 ¶¶ 553–583. Plaintiffs seek to define the putative class as "[a]ll persons or entities who, during the period of June 1, 2005, through the present ("Class Period"), settled a credit default swap in the United States and its territories by reference to the ISDA credit default swap auction protocol or the auction process that became the ISDA credit default swap auction process." Doc. 151 ¶ 544. Defendants moved to dismiss the First Amended Complaint, and the Court granted the motion in part and denied it in part. *See In re CDS Auctions*, 710 F. Supp. 3d at 941, 943–49. The Court dismissed the claims against certain foreign defendants for lack of personal jurisdiction but allowed all other claims to proceed.[2] *Id.* at 949.

Following denial of the Motion to Dismiss, the remaining Defendants filed a Motion to Stay in this Court and a Motion to Enforce the Release in the SDNY. *See* Doc. 221. This Court granted a stay, concluding "[b]ased on the language of the Release, it appears that the SDNY—not this Court—is the only court with the jurisdiction to decide" whether the Release applies. Doc. 230 at 7; *see also In re CDS*, No. 13-md-2476, Doc. 445-1 at 37 ("[T]he Court shall retain jurisdiction for the purpose of entering all orders relating to matters addressed in this Agreement and enforcing the terms of this Agreement."). In the SDNY action, that court concluded

[2]The Court dismissed Citigroup Global Markets Limited, Credit Suisse International, and NatWest Markets plc. *See* Doc. 173 at 58–59.

Plaintiffs' claims "share an identical factual predicate with the Released Claims" and barred Plaintiffs "from pursuing their claims . . . for any alleged violation of the antitrust laws based on conduct occurring before June 30, 2014." *In re CDS*, 2024 WL 303802, at *1, *3, *dismissed sub nom. BNP Paribas v. N.M. State Invest. Council*, 2025 WL 1443654 (2nd Cir. May 20, 2025) (dismissing the appeal for lack of jurisdiction but noting that "the settled claims and the claims the [Plaintiffs] now seek to pursue share the same set of integral facts"). The court determined that while Plaintiffs' claims "involve different facets of the CDS market, they stem from the same factual predicate of the Banks' conspiracy to create and maintain an inefficient CDS marketplace that allows them to manipulate prices for their own benefit." *Id.* at *4.

Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Doc. 256. They argue, in relevant part, that Plaintiffs are enjoined by the SDNY order from pursuing their claims because the core of Plaintiffs' allegations and evidence are "inextricably tied" to conduct occurring before June 30, 2014. *Id.* at 7. Plaintiffs oppose the motion. *See generally* Doc. 258.

## ***II. Legal Standard***

A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard applicable to motions filed under Rule 12(b)(6). *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017). To survive judgment on the pleadings, Plaintiffs "must allege a claim to relief that is plausible on its face." *Id.* (citation modified). The plausibility of a claim for relief turns on "whether the plaintiff has pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation modified). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). Courts "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in that party's favor." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation modified).

## ***III. Analysis***

The Court concludes that Plaintiffs are barred from pursuing their claims for any alleged violation of the antitrust laws based on conduct occurring before June 30, 2014. The Court, however, will grant Plaintiffs leave to file a second amended complaint.

### ***A. The Release precludes Plaintiffs' claims based on conduct occurring before June 30, 2014.***

The Court dismisses Plaintiffs' claims to the extent they allege violations of antitrust law based on a theory of continued conspiracy predicated on conduct occurring prior to June 30, 2014. "Under federal law, settlements have claim-preclusive effect between the parties to the settlement." *Denver Homeless Out Loud v. Denver, Co.*, 32 F.4th 1259, 1271 (10th Cir. 2022) (citation modified). Plaintiffs do not contest that the Release precludes all claims based on independently actionable conduct that accrued before June 30, 2014. Doc. 258 at 6. Indeed, the SDNY has determined the Release applies: Plaintiffs were members of the class, they did not opt out of or object to the settlement or the release, and their claims "stem from the same factual predicate" of the Banks' conspiracy to manipulate the CDS market. *In re CDS*, 2024 WL 303802, at *2, *4.

Instead, Plaintiffs argue that "[a] settlement release precludes *claims* accruing prior to a certain date, not *evidence* of the misconduct itself[.]" Doc. 258 at 7 (emphasis in original). Plaintiffs further suggest they may "plead, discover, and prove facts that occurred before July 1, 2014, so long as those facts support their claims for auction rigging that took place *after* the

Release Date." *Id.* at 17 (emphasis in original). The Court disagrees. Plaintiffs' attempt to differentiate between independently actionable conduct (for which it is established they may not bring a claim) and background evidence (proof of past anticompetitive behavior to establish a new claim) is a distinction without meaning under the terms of Release at issue here. The Release bars any claims—"known and unknown"—arising from *or relating in any way* to conduct occurring before June 30, 2014, including conduct "that has been or could be alleged to be or have been anticompetitive[.]" *In re CDS*, 2024 WL 303802, at *2, *4 (quoting Release). At best, as plead in their First Amended Complaint and argued in their Response, Plaintiffs' allegations of post-2014 misconduct are simply "new, overt acts within an ongoing conspiracy, rather than new claims in and of themselves."[3] *In re Managed Care*, 756 F.3d 1222, 1236 (11th

---

[3]The Court rejects Plaintiffs' arguments analogizing the present action to circumstances where courts have permitted a party to use prior misconduct as evidence to establish a continuing course of conduct. Doc. 258 at 17–18. The cases cited by Plaintiffs are inapposite as they concern whether misconduct occurring outside of a statutory limitation period may be used as background evidence in support of timely claims, or whether acts occurring outside of an applicable statute of limitations are independently actionable under an exception to the rule. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (concluding that, in context of employment discrimination action, a court may consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period"); *Sunderman v. Westar Energy, Inc.*, 307 F. App'x 224, 228–29 (10th Cir. 2009) (holding that district court should have considered prior retaliatory acts that occurred prior to filing of complaint "as background evidence when considering" claim for retaliation); *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1247–48 (10th Cir. 2016) (applying continuing conspiracy exception to determine date cause of action accrued for purposes of Sherman Act four-year statute of limitations); *Champagne Metals v. Ken-Mac Metals, Inc*, 458 F.3d 1073, 1088 (10th Cir. 2006) (determining plaintiff's claims were not barred by statute of limitations under continued conspiracy exception); *Sanchez v. Am. Fed'n of State, Cnty., & Mun. Emps.*, No. 09-cv-1210-BB-RHS, 2011 WL 13285698 at *3 (D.N.M. May 4, 2011) (permitting the use of evidence of discriminatory conduct occurring outside of the limitation period as "background evidence in support of a timely claim").

Here, the question is not one of timing—Plaintiffs are barred from pursuing any claims, "whether known or unknown, accrued or unaccrued, foreseen or unforeseen, matured or not matured, suspected or unexpected, liquidated or not liquidated, fixed or contingent, direct or derivative" that arise from or relate to conduct by Defendants to manipulate prices and maintain an inefficient CDS marketplace that occurred prior to June 30, 2014. *In re CDS*, No. 13-md-

Cir. 2014). In fact, Plaintiffs frame their allegations as such, asserting that "the First Amended Complaint simply does not allege a conspiracy to structure the auctions in 2009. Rather, it alleges a conspiracy to engage in information sharing and coordinated pricing in the auctions *that has continued up until the present day*[.]" Doc. 258 at 7 (emphasis added). However, the Release is clear: all claims relating in any way to any anticompetitive conduct that occurred prior to June 30, 2014, are precluded. Thus, by Plaintiffs' own admission, the First Amended Complaint pleads conduct the Release forbids.

The Court also rejects Plaintiffs' contention that enforcing the Release immunizes Defendants from claims arising from post-June 30, 2014, conduct. Doc. 258 at 15. To be sure, prospective waivers of the right to pursue statutory remedies for antitrust violations are strongly disfavored as against public policy. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.1 (1985). Even so, class action releases can preclude future claims so long as the released conduct arises out of the identical factual predicate as the settled conduct. *See Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006) (recognizing "exception[] to the rule that only claims related to the existing transaction are precluded" under the doctrine of res judicata where "the judgment entered in the prior action . . . incorporated a settlement intended to govern future, related transactions between the parties"); *see, e.g.*, *Denver Homeless Out Loud*, 32 F.4th at 1274 n. 14 (noting settlement agreement incorporated broad release that precluded future claims against defendants); *see also In re CDS*, 2024 WL 303802, at *3.

---

2476-DLC, Doc. 667 at 2. To the extent Plaintiffs intend to rely on the statistical analysis that encompasses pre-2014 conduct, Plaintiffs may explain in any subsequent amended complaint whether the evidence is being proffered as proof of noncompetitive behavior, or to demonstrate that the structure of the market was conducive to such behavior.

Here, contrary to Plaintiffs' assertion, the plain language of the Release does not prevent Plaintiffs from asserting new claims *based solely on alleged misconduct occurring after June 30, 2014*, that do not share an identical factual predicate with the settled conduct. The Court therefore dismisses Plaintiffs' claims to the extent they are predicated on conduct occurring before June 30, 2014, and bars Plaintiffs from seeking or offering evidence of pre-2014 anticompetitive behavior to prove the existence of a continued conspiracy.[4]

***B. The Court will grant Plaintiffs leave to file a second amended complaint.***

The Court *sua sponte* grants Plaintiffs leave to amend their complaint should they wish to do so. Federal Rule of Civil Procedure 15(a)(2) provides that the Court "should freely give leave [to amend] when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Plaintiffs did not request leave to amend their complaint. However, the Court is persuaded that Defendants would not suffer prejudice if Plaintiffs streamline their allegations and narrow their claims to conduct occurring after June 30, 2014.

Furthermore, at this time it appears that an amendment would not be futile because it is possible for Plaintiffs to provide facts necessary to support their claims. In fact, Plaintiffs have

[4] The Court declines to reach Defendants' remaining arguments because they are unnecessary to the disposition of this Motion. Defendants contend that the applicable statutes of limitation preclude Plaintiffs "from seeking damages from before June 2019 for their CEA claims, and from before June 2017 for their antitrust and unjust enrichment claims." Doc. 256 at 8. Defendant also assert that dismissal of Defendant NatWest is appropriate as "Defendant NatWest is not alleged to have been involved in any CDS auctions after June 30, 2014, at the latest[.]" *Id.* at 22. Defendants may raise these arguments in a subsequent motion if Plaintiffs choose to file a second amended complaint.

alleged anticompetitive behavior not predicated on conduct occurring before June 30, 2014: Plaintiffs identify "no less than 16 auctions post-June 2014 where Defendants' misconduct caused the final auction price to be artificially and materially suppressed." Doc. 151 ¶¶ 425–81; *see also* Doc. 258 at 18–19. Plaintiffs also highlight that Defendants have shifted "to using encrypted messaging services like WhatsApp or Signal instead of Bloomberg chat, which is recorded and has an audit trail." Doc. 151 ¶ 210. Plaintiffs note that as recent as 2021, Defendant JP Morgan "was fined $200 million . . . because of the widespread use of personal devices . . . to communicate sensitive business matters, thereby avoiding detection and eliminating audit trail." *Id.*. These allegations demonstrate that Plaintiffs can allege facts necessary to support its claims. As a result, the Court will allow Plaintiffs to file a second amended complaint predicated on conduct occurring after July 1, 2014. To the extent that Defendants disagree about the futility of Plaintiffs' claims, they may raise these concerns in a motion to dismiss in response to the second amended complaint.

## *IV. Conclusion*

For the reasons above, Defendants' Motion for Judgment on the Pleadings, Doc. 256, is granted in part and denied in part. Plaintiffs' claims predicated on released conduct occurring before June 30, 2014, are dismissed with prejudice.

The Court grants Plaintiffs leave to file a second amended complaint for Plaintiffs' claims based on conduct occurring after July 1, 2014. Any second amended complaint must be filed within thirty (30) days of the date of this Memorandum and Order. A second amended complaint will completely replace the First Amended Complaint, must stand on its own without reference to the First Amended Complaint, and must contain all of the claims Plaintiffs seek to pursue. If Plaintiffs elect not to file a second amended complaint or fail to file a second amended

complaint within thirty (30) days of this Memorandum and Order, the Court will direct the Clerk of Court to enter judgment dismissing the First Amended Complaint with prejudice for the reasons stated above.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales____________________
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.